CHAPMAN HALBERT ET AL. V. STATE OF NEBRASKA.

FILED OCTOBER 6, 1927. No. 25934.

(1)

*John C. Mullen,* for plaintiffs in error.

*O. S. Spillman, Attorney General,* and *Donald Gallagher, contra.*

Heard before Goss, C. J., Rose, Dean, Day, Good, Thompson and Eberly, JJ.

Goss, C. J.

All three defendants were jointly charged and tried under section 9612, Comp. St. 1922. The first count charged them with stealing from George Parchen about 35 chickens of the value of $35, and the second count charged the defendants Louis Halbert and Mrs. Louis Halbert, father and mother of the other defendant, with receiving certain stolen chickens from the defendant Chapman Halbert and others unknown, knowing them to have been stolen from George Parchen. The jury found the defendant Chapman Halbert guilty and the other defendants not guilty on the first count and found the defendants Louis Halbert and Mrs. Louis Halbert guilty on the second count. The defendants were duly sentenced. The defendant Chapman Halbert accepted his sentence. The other defendants are here on proceedings in error. Unless otherwise described, they will be referred to as the defendants.

The chief complaint of the defendants is that the second count did not state that the stolen chickens alleged to have been received by the defendants had some value. Was this necessary?

Section 9612, provides: "Whoever steals any chickens * * * of any value or receives or buys any chickens * * * that shall have been stolen, knowing the same to have been stolen, with intent, by such receiving or buying, to defraud the owner * * * shall be imprisoned" as provided in the section.

This section makes it a substantive offense to steal or receive chickens of any value, as section 9598 makes stealing property of any value by taking from the person without putting in fear, as section 9602 makes stealing or receiving

any stolen horse or its kind, of any value, as section 9603 makes the stealing or receiving stolen cattle, of any value, as section 9611 makes the stealing or receiving stolen hogs, of any value, and as section 9616 makes the stealing or receiving or buying of a stolen automobile, of any value, a substantive offense. The subject is not new. In *Mares v. State,* 112 Neb. 619, the cases prior to *Griffith v. State,* 94 Neb. 55, are referred to by Chief Justice Morrissey and overruled in so far as they support the contention of the plaintiffs in error. In that case, the defendant was charged with buying and receiving a stolen automobile. It should be noted that section 9616 contains the phrase "of any value" both in the part making it an offense to steal an automobile and in that part making it an offense to buy or to receive a stolen automobile, while in the instant case that phrase is omitted in section 9612 in the part of the section denouncing the unlawful receiving of stolen chickens, of which offense the defendants at bar were convicted. This court, in the *Mares* case, expressed the rule in the text of the opinion and in the syllabus as follows:

"In a prosecution under section 9616, Comp. St. 1922, it is neither necessary to allege in the information nor to find in the verdict the value of the property described."

These words evidently do not fully express what the author of the opinion and the court had in mind, for the information, quoted in the opinion, shows that the prosecutor in drawing the charge did not even allege that the automobile was of value and made no reference to value whatever. The interpretation of the statute by the court was, therefore, this: That the legislature, by the words "of any value," meant that stealing an automobile or knowingly buying a stolen automobile was an offense irrespective of value or without regard to its value, and thus did away with the necessity, not only of charging value, but also of finding any specific value. The theory upon which this rests is that of judicial notice of value, on the principle that courts take judicial notice of whatever is generally known within the limits of their jurisdiction. With reference to the

value of money, the same question was raised in *Reed v. State,* 66 Neb. 184, where larceny from the person was the particular offense. The late Chief Justice Sullivan with his characteristic clarity, and with his saving touch of humor, said: "It is not necessary for a jury in any case to fix the value or worth of a dollar; judges, as well as other people, know what it is. *Bartley v. State,* 53 Neb. 310." Judges, as well as other people, in this jurisdiction, know that an automobile is of value. All know that chickens, alive and well enough to run around, are at least a basis upon which juries in this jurisdiction may ground a finding of some inferential value.

It should be noted, too, that the portion of section 9612 which denounces the receiving of stolen chickens, being the charge on which the defendants were convicted, omits any use of the word "value." Moreover, the general rule, is: "Where by statute an aggravated form of larceny is punishable without reference to the value of the goods stolen, the value need not be stated." 36 C. J. 826, sec. 301. Generally, a careful drawer of indictments and informations puts into the charge all the calls indicated directly or even by implication in the statute under which he is prosecuting; and in the discussion in *Mares v. State, supra,* this court suggested that, for the purposes of imposition of sentence, it was well to show the value of the property involved. However, we do not think the assignment of error before us is well taken, and we hold that in a prosecution under section 9612, Comp. St. 1922, it is not necessary to allege in the information that stolen chickens received by the defendant had value.

Defendants argue that the court erred in refusing to grant their motion made at the close of the evidence to dismiss the first count as to the defendants. If this was erroneous it was cured by the verdict of the jury acquitting these defendants on the charge contained in that count. 17 C. J. 285, sec. 3621.

The defendants insist that the verdict is not sustained by sufficient evidence. There was ample testimony from

which it could be concluded that chickens stolen from Henry Parchen were found on their premises; that they were stolen by their son and co-defendant Chapman Halbert, and another, and taken home in the night-time while the defendants were at home; but there is no direct evidence that these defendants received or even knew that there were any other than their own chickens on the premises; in that respect the reliance of the state is on circumstantial evidence alone.

While not compelled to do so in a law case, yet in this instance we have read the entire testimony in order to discover what, if any, guilty knowledge the father and mother had of the presence on their place of the chickens brought there about 2 o'clock in the morning and found there about two hours later by the officers and neighbors. The testimony of the witnesses shows at its best for the state the following: A witness who lived about a mile and a half away from the Halbert home testified that about 1 o'clock on the night in question a car had stalled in front of his home; that he was awakened and heard chickens in the back of the car; that the car started and went down about 15 rods to a culvert; that he thought the parties in the car were carrying something to the culvert; that he took his boy with him to see what they did at the culvert, but found nothing there; that the car, a coupé, had gone on; that thereupon he notified the sheriff, who came out with a deputy, and that his son got in with the sheriff and the deputy and followed the coupé; one of the deputy sheriffs testified that he followed the coupé to the Halbert home, where it had been stopped and parked in the barnyard; that he raised the lid and found about 15 chickens in the back end of the coupé; that he called for Mr. Louis Halbert, and a voice unidentified by him ordered him off the place, following which a shot was fired, and he then went to town for a search warrant, leaving two companions to watch the place; that he returned about 2 o'clock with the search warrant and read it to Mr. Halbert, although Mr. Halbert told him he did not need any search warrant; that thereupon, in company with Mr.

and Mrs. Halbert, and others who had gathered, the various chicken houses were searched, with the result that some of the Parchen chickens involved in this case were discovered; that Mr. and Mrs. Halbert showed him all the chicken houses except one small house which he opened up himself. His testimony shows that he made no charges against these defendants and they made no admissions while he was there.

Another witness testified that he was left by the deputy sheriff with another to watch the house while the deputy went after the search warrant, that they did watch the place while the deputy was gone—an hour and a half or two hours—and were there when the search warrant was executed by a search of the chicken houses; that the Halberts were there and said that the house in which the chickens were found was their duck house and the witness testified that it was a duck house (and there was other testimony that this particular house had no roost in it); that when the chickens were taken out and claimed, Mrs. Halbert did not want to see them go off the place and wanted to mark them with a pair of scissors.

Another witness, who was likewise charged to watch the place and did so while the deputy was absent after the search warrant, was present during the later search of the chicken houses, and testified that the Halberts said one little shack was their duck house, and that when the deputy sheriff searched it he found chickens in it, which Mrs. Halbert wanted to mark with a pair of scissors when she found they were going to take them off the place and that Mr. Halbert thought they ought to give a bond before taking the chickens away. While none of the witnesses so testified, it may be inferred from the lack of evidence on the subject that the defendants never left the house after the deputy sheriff arrived shortly behind the coupé in which the stolen chickens were taken to the Halbert home.

It is interesting to note from Chapman Halbert's testimony that he was in the car stalled in front of the neighbor's house; that he and another went down to the culvert, took out some chickens they had previously left there, took

them to his home, put them in the chicken house or duck house, and that it was his companion who fired the shot, heard by the deputy sheriff, and then departed. All the defendants in their testimony denied that the father and mother received the stolen chickens, knew that they were stolen, or knew that they were on the premises; and, as the evidence heretofore abstracted shows, when the officer was about to remove the chickens, upon their discovery, the mother wanted to mark them, evidently to identify them later, and the father wanted a bond given before their removal.

The mere fact that the chickens were on the premises, for approximately only two hours, and that in the night-time, and during almost all of which time the place was being watched by officers, is not sufficient evidence from which a jury might draw the inference that the defendants had received the chickens and had guilty knowledge that the chickens had been stolen by their son.

The court aptly charged the jury, in relation to circumstantial evidence, that, to justify a conviction, such evidence must be inconsistent with any hypothesis of innocence that can reasonably be drawn from the evidence. - It is evident that the hypothesis of innocence could readily be drawn from the evidence and that the jury ignored this instruction. It is apparent, also, that the evidence was insufficient as a basis of the hypothesis of guilt, and therefore the defendants should have been granted a new trial on the ground that the verdict was contrary to the evidence.

The defendant Chapman Halbert having accepted his sentence and waived error, for the reasons stated in the opinion the judgment of the district court is affirmed as to Chapman Halbert and is reversed and the cause remanded for further proceedings in the district court as to Louis Halbert and Mrs. Louis Halbert.

AFFIRMED IN PART, AND REVERSED IN PART.