FLOYD LEISTRITZ, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

85 N. W. 2d 318

Filed October 11, 1957. No. 34155.

*Charles A. Fisher,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Gerald S. Vitamvas,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

The defendant was convicted of cattle stealing under section 28-510, R. R. S. 1943. He claims error in that the evidence is insufficient to sustain a conviction and that the trial court erred in giving certain instructions and failing to give others requested by him.

The evidence of the State shows that on the night of February 5, 1956, defendant Leistritz together with Maurice O'Connor and George Piihl went upon the ranch lands of the Lakeside Ranch Company pursuant to a previous agreement and feloniously killed and carried away a yearling steer belonging to the company. O'Connor and Piihl testified for the State and in effect stated that they, together with Leistritz, shot and killed the steer, hog-dressed it at the place of the killing, loaded it in a truck, and conveyed it to the home of Piihl. On the enclosed back porch of the Piihl home they completed the skinning and quartering of the animal and divided the meat. The evidence of the two accomplices as to the dressing and quartering of the steer at the Piihl home was fully corroborated by Sara Jean Piihl, who saw the three of them dressing and quartering the beef on the enclosed porch of the Piihl home. The evidence was sufficient to sustain the finding of the jury.

The evidence of the two accomplices unequivocally shows the defendant to have been a participant in the

stealing of the steer. The rule is: "A conviction may rest on the uncorroborated evidence of an accomplice when, considered with all the testimony and circumstances, it satisfies the jury beyond a reasonable doubt of the guilt of the accused." Garcia v. State, 159 Neb. 571, 68 N. W. 2d 151.

The defendant complains of the failure of the trial court to give his requested instruction No. 2 which is to the effect that the information charges the offense of grand larceny under section 28-506, R. S. Supp., 1955. The defendant asserts that it was error not to instruct that the jury could find the defendant guilty of the lesser offenses of grand or petit larceny. The information charged that the defendant did "unlawfully, feloniously steal, take and carry away one hereford steer, branded Bar Shoe on left side, the personal property of the Lakeside Ranch Co., of the value of $100.00, * * *."

Section 28-510, R. R. S. 1943, the cattle-stealing statute, provides in effect that whoever steals any cow, steer, bull, heifer, or calf of any value shall be punished as therein provided. It is contended that in alleging the value of the steer to be $100, the charge is brought under the section on grand larceny and not under the cattle-stealing statute. There is no merit to this contention. The allegation in the information that the steer had a value of $100 is an allegation that the steer had some value under the cattle-stealing section. The averment that the steer had a specific value of $100 is mere surplusage and does not have the effect of changing the charge from cattle stealing to grand larceny. The rule in this state is: When the words appear in an information which might be stricken out, leaving an offense sufficiently charged, and such words do not tend to negative any of the essential elements of the offense, they may be treated as surplusage and wholly disregarded. Schluter v. State, 153 Neb. 317, 44 N. W. 2d 588; Buthman v State, 131 Neb. 385, 268 N. W. 99.

Defendant contends that the evidence does not show

that a steer was stolen; that the most the evidence shows is that the carcass of a steer was taken and carried away. In this respect the evidence of the two accomplices is that defendant held a spotlight on the steer while O'Connor shot it. This same situation was dealt with in McIntosh v. State, 105 Neb. 328, 180 N. W. 573, 12 A. L. R. 798. We there said: "On this state of facts it is suggested that the circumstances do not show the stealing and carrying away of the steer; that there was no possession by the accused of the steer as a live animal. The testimony shows a clear and unmistakable intent on the part of the accused to steal the steer and sell the meat. To aid himself in carrying out this purpose, he shot and killed the steer, took possession of the carcass, dragged it same distance from the spot, where, after severing the head from the body, he became apprehensive of detection, and fled. We think the facts bring the case within the inhibition of the statute. Of course, if the steer had been accidentally or recklessly killed, and the carcass had been found by the defendant and feloniously stolen, such facts would not be a stealing of the steer within the meaning of the statute." We shall not labor this question further except to say that when a steer is killed as a means of making its theft possible, the crime of cattle stealing is complete, the same as if it had been loaded on a truck alive and carried away. The shooting was but the manner chosen to obtain possession. The defendant being an accomplice by assisting in the act is as guilty in law as the person doing the shooting.

The defendant strenuously argues that the court erred in giving instruction No. 8 dealing with the asportation of the steer. The court by this instruction told the jury in part: "Among other things to constitute a larceny, the taker must reduce the cattle to his complete control, and there must be a taking or a removal, however slight, after the same is under the complete control of the taker. However, where one or more persons form an

unlawful and felonious intent to steal a beef animal, of value, and to use the meat, and to aid in such felonious purpose, shoot and kill such animal, and in furtherance of such felonious intent, hog dress it and then remove the carcass from the spot where killed, that would constitute a taking and carrying away such as is contemplated by the Statute, and it would be immaterial that the animal was not removed before it was killed, and if you believe from the evidence beyond a reasonable doubt that at the time and place charged, one Maurice O'Connor together with George Piihl or with George Piihl and the defendant went to the pasture in question, with a common unlawful, felonious intent to steal a beef animal from said pasture, and to use the meat or a part of it, and personally deprive the owner of said animal, and to aid in such common purpose shot and killed a beef animal, of value, and afterward in furtherance of such felonious intent hog dressed, and later removed it from the spot, all without the owners consent, that would constitute a taking and carrying away such as is contemplated by the Statute."

It is urged that the court erred in stating to the jury "and if you believe from the evidence beyond a reasonable doubt that at the time and place charged, one Maurice O'Connor together with George Piihl or with George Piihl and the defendant went to the pasture in question, with a common unlawful, felonious intent to steal a beef animal from said pasture" in that it infers that a felonious taking by O'Connor and Piihl would be a taking by the defendant. We point out that that instruction as a whole must be considered in considering this point. The quoted sentence of the instruction begins with the words: "However, where one or more persons form an unlawful and felonious intent to steal a beef animal, * * * and to aid in such felonious purpose, shoot and kill such animal, and in furtherance of such intent, * * * remove the carcass from the spot where killed, * * * and if you believe * * * one Maurice O'Con-

nor together with George Piihl or with George Piihl and the defendant * * * to aid in such common purpose * * * that would constitute a taking and carrying away such as is contemplated by the Statute." The jury could hardly have been misled by this instruction. It in effect instructs that if the three conspired to steal the steer, and in carrying out the conspiracy the two confessed accomplices, or the three acting in concert, feloniously carried away the steer, the requirements of the statute as to the asportation of the animal have been met. We think the instruction considered as a whole, although it could have been written with more clarity, is not prejudicially erroneous.

But, irrespective of the foregoing conclusion, there is another reason why the instruction is not prejudicially erroneous. There is ample evidence in the record that defendant aided and abetted in the stealing of the steer, which the jury evidently believed. The two accomplices testified that the hog-dressed steer was taken to the home of Piihl. They testified that the three of them put it on the enclosed back porch where they skinned, dressed, and quartered it. Sara Jean Piihl, the 10-year-old daughter of Piihl, testified that she was awakened during the night by a noise from the back porch. She got up without turning on the light and looked out the kitchen window onto the porch. There she saw her father, O'Connor, and the defendant. She saw the beef and the hide, fully corroborating the testimony of O'Connor and her father. The trial court instructed the jury that one who aids and abets another in the commission of a crime is equally guilty. It is fundamental that an aider and abettor need not necessarily be a party to the killing or carrying away of a stolen steer. The asportation of the animal by any one or more of them under such circumstances would constitute a sufficient asportation as to all.

Instruction No. 8 states in effect that if the two accomplices, or the two accomplices and the defendant,

went to the pasture with a common, unlawful, felonious intent of all three of them to steal a beef animal, and to use the meat or a part of it, and to aid in such purpose, shot, killed, and dressed it out, it would constitute a sufficient asportation of the animal.

The trial court made the rule of law abundantly clear by instruction No. 9. By that instruction the court in part told the jury: "You are further instructed that mere presence at the commission of a crime without aiding, abetting or procuring its commission with unlawful intent, is not sufficient to establish the guilt of such party, and even though you may believe from the evidence beyond a reasonable doubt that Maurice O'Connor, and George Piihl may have stolen the animal in question, at the time and place alleged, and that the defendant was present at the time, and that after the animal was shot and killed, he assisted in butchering it out and took some of the meat, yet, before you could find the defendant guilty of the crime charged herein you must be convinced by the evidence beyond a reasonable doubt among other things, that the defendant formed and shared with the others a common felonious intent and plan to steal a beef animal and assist therein before the animal was shot and killed. If you entertain a reasonable doubt thereto, then you should give the defendant the benefit of such doubt and acquit him of the charge made."

Instructions No. 8 and No. 9 make it clear that a felonious taking and carrying away by O'Connor and Piihl would constitute a sufficient asportation as to the defendant only if defendant was a party to a plan to steal a beef animal and participated in it subsequently in some manner with the felonious intent to aid and abet the crime. The jury could not have been misled by the language of instruction No. 8 when it was read in connection with instruction No. 9. See McIntosh v. State, *supra.*

Under his plea of not guilty the defendant relied

primarily upon an alibi as a defense. His testimony was that he left the company of O'Connor and Piihl in the late afternoon and returned home. His evidence is that he attended a motion picture show in Alliance that evening. He said there was no conversation with O'Connor and Piihl about taking, killing, or butchering a beef. He denied any connection with the crime. He produced evidence in support of his alibi which raised a question of fact for the jury on that issue. The trial court properly instructed on the alibi as a defense. The jury determined the issue of fact thus raised in favor of the State. The findings of the jury being supported by competent evidence, its conclusions must be accepted by this court. The trial court did not err in overruling defendant's motion for a directed verdict and in submitting the issues of fact to the jury.

We have examined other alleged errors in the instructions and we find them to be without merit. The instructions tendered by the defendant were either covered by instructions given by the court or were properly refused by the trial court as incorrect statements of the law under the evidence adduced. Since there is no prejudicial error in the record, the judgment of the district court is affirmed.

AFFIRMED.