STATE OF NEBRASKA, APPELLEE, v. LYLE EDGAR NELSON, APPELLANT.

152 N. W. 2d 10

Filed June 30, 1967. No. 36516.

Charles A. Fisher and Charles F. Fisher, for appellant.

Clarence A. H. Meyer, Attorney General, and Bernard L. Packett, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

NEWTON, J.

This is an action wherein the State prosecuted Lyle Edgar Nelson, appellant herein, on a charge of cattle stealing. Trial was had to a jury and a verdict of guilty rendered. The evidence is to the effect that one Margaret Molzahn, who resided in Hay Springs, Nebraska, was the owner of a ranch in Sheridan County on which, she testified, a herd of black angus cattle owned by her was maintained, and that Arthur Klemm resided on the ranch and acted as the foreman or supervisor of the ranch and livestock. Arthur Klemm testified that he was the owner of the cattle although they were listed for taxation in the name of the ranch owner. The fact that Arthur Klemm was in sole possession of the cattle at the time of the alleged theft was undisputed however. Mr. Klemm was accustomed to checking the cattle every 2 days and in the first part of January discovered that 25 out of the 76 head of cattle on the ranch had disappeared. He searched the neighborhood for the missing cattle, but was unable to locate them and then reported the fact that some of the cattle were missing to the Sheridan County sheriff. Klemm stated that out of the 76 head, all but 7 cows and 2 bulls had been raised by him. He had made it a practice to tame and make pets of the heifers and cows, had named each of them, many of them would come when he called them, and could be fed by hand. This witness further stated that some of the cattle were not branded and that on March 2 and March 10, 1966, he made trips to the Cameron Fanning ranch at Vetal, South Dakota, at which time he was able to call 5 cows, varying in age from 2 to 6 years, from a larger herd and feed them by hand. He referred to these cows by the individual names he had

given them. Other persons who accompanied him on the trip also attempted to approach the five cows, but could not get near any of them. Mr. Klemm testified that these were five of his missing cows.

The evidence further shows that these cows were purchased by Ronald J. Fanning, son of Cameron Fanning, at the Martin, South Dakota, sale barn on January 15, 1966; they then bore the lazy B mill iron brand on the left hip, and the brands were fresh. This brand was owned by B. J. (or Betty Joe) Schmitz Nelson, wife of the defendant, and a bill of sale was executed by her to the purchaser. Mr. Fanning made out two checks in payment for the cattle, one to the defendant for $1,928 and one to a man by the name of Bill Porch for $447, the checks being thus made in accordance with the directions of the defendant. The defendant's evidence indicated that the defendant had sold some horses belonging to the defendant in the name of Bill Porch but no explanation was offered regarding the consideration for the $447 check. Ernest Bailey, investigator for the Nebraska Brand Committee, was called by the State and testified that cattle were usually branded as calves, it being unusual to brand them at a later date. He also stated that he was present at the Fanning ranch on March 2 and 10, 1966, when Mr. Klemm inspected and identified the cattle and, in his judgment, the brands were fresh and just starting to "peel" when he saw them in March; and that it ordinarily required, during cold weather, a period of from 5 to 7 weeks for brands to peel.

The Molzahn ranch occupied by the witness Klemm in Sheridan County lies adjacent to what was referred to in the evidence as the Albert Gehrt ranch, northwest of Rushville, Nebraska. There were some corrals in the pasture at the Gehrt place located about a half mile south from the Molzahn ranch buildings. One Frank Ogle was called as a witness by the State and testified that he had worked for the defendant at the defendant's

ranch in South Dakota commencing a little before Thanksgiving 1965. His evidence is, in substance, as follows: On Sunday, January 2, 1966, he rode with the defendant in defendant's 1½-ton, red, Chevy truck to Rushville, Nebraska, where defendant got a Chevrolet pickup owned by him from the Chevrolet garage where it had been repaired. Defendant, Ogle, and one Ernie Abold then drove out in the country northwest of Rushville in Abold's car where they looked at some horses and black cattle. They returned to Rushville; Ogle drove the pickup truck to defendant's ranch; and defendant drove the truck home. About 11 p.m. that evening, defendant woke Ogle and took him on a trip in the truck. It was a clear, moonlight night. They drove west to Pine Ridge, South Dakota, turned south through White Clay, and continued on for several miles in a southwesterly direction. Defendant stated that he had lost the tailgate of his truck and wanted to find it. The tailgate was found on the shoulder of a county road and they continued on for about 2 miles where defendant turned off onto a pasture trail. Defendant turned off the truck lights and drove approximately another 2 miles through the pasture to the corrals on the Albert Gehrt place. There, approximately 10 head of black cows were loaded by defendant and the witness; they retraced the trail through the pasture to the county road where the lights were turned on, then drove to the defendant's ranch and unloaded the cattle. A couple of days later, the cattle were branded with the lazy B mill iron brand on the left hip and were then taken to the Martin, South Dakota, sale ring and unloaded. After the cattle were sold, the witness and defendant returned to the defendant's ranch and a couple of days later, the witness Ogle went into Gordon, Nebraska. The defendant found him in a hotel room and told him: "I think I just as well get you out of here," drove him to Alliance, Nebraska, and gave him $20 and a bus ticket to Denver. Ogle stayed in Alliance and cashed in the bus ticket.

On New Year's Day, Ogle had driven with the defendant to Mobridge, South Dakota, to take some horses to the sale ring there. The horses were sold that evening and they then returned to the defendant's ranch, arriving there on the morning of January 2, 1966. The witness further stated that later in the spring, he gave directions to the Sheridan County sheriff and to Ernest Bailey to enable them to find the corrals where the cattle had been loaded and rode with them to the corrals on the Gehrt place.

Defendant's evidence was, in substance, as follows: His wife testified that she had left November 17, 1965, to visit her parents in Montana and did not return until December 23 at which time she observed the 14 black cows on the place which, she said, were taken to the Martin, South Dakota, sale barn on December 24, 1965, and bore her brand. She stated it was on December 31 when she took her husband and the witness Ogle to Rushville and they picked up from the Chevrolet garage both the 1½-ton truck and the pickup. Eugene American Horse testified that he occasionally worked for defendant and on Thanksgiving Day 1965 helped him brand some black and mixed cattle. Also, on the day before Christmas, he helped load some black cattle and hay that were taken to Martin, South Dakota. Defendant's wife further testified defendant did not return from the horse sale in Mobridge until 8 or 9 o'clock on the evening of January 2, 1966, and did not leave the ranch thereafter during that evening or the next day. Defendant's evidence corroborated that of his wife and Eugene American Horse as to the branding of the cattle on Thanksgiving Day, the sale of the horses in Mobridge, the return to the ranch late on the evening of January 2, 1966, and the sale of the 14 black angus cows at Martin, South Dakota. He had about 50 steers and 30 cows of mixed types on the ranch of which 30 or 40, including cows, yearlings, etc., were black cattle. He also stated he obtained the truck and the pickup from the Rushville

garage on December 31, 1965, and denied he was in Rushville on January 2, 1966. He admitted seeing the witness Ogle in Gordon, driving him to Alliance, and buying him a bus ticket to Denver, but stated this was in accordance with Ogle's request. He denied ever being on the Molzahn or Gehrt places at or about the time of the alleged theft and on cross-examination, admitted that he had talked with Ogle at Rapid City, South Dakota, since the preliminary hearing, but denied talking to him about this case or about leaving the country. Two other neighbors of defendant testified they stopped at his place on the afternoon of Thanksgiving Day and that he had then been branding some black cattle. Another witness for defendant, who was a trader in livestock, stated that a day or two after Christmas, defendant had taken him to the Martin sale barn and tried to sell him 14 black cows.

In rebuttal, the State called the owner of the Chevrolet garage at Rushville, and his parts-man, both of whom positively testified that on the afternoon of Sunday, January 2, 1966, the defendant came in after his pickup truck, having obtained his other truck on December 31, 1965. Frank Ogle was also recalled and testified that during August 1966, he was in Rapid City when the defendant accosted him on the street, and asked him to get in defendant's car after which they, together with another individual, drove out into the country where defendant said: "* * * he was going to whip me," and that "* * * I should have got out of the country * * *." They stopped, got out of the car, and the witness was assaulted by defendant and the other individual. The witness was then left out in the country, walked to the nearby community of Farmingdale, South Dakota, caught a ride to Rapid City, South Dakota, and went to Bennett Clarkson Hospital where his wounds were stitched up.

It appears that this case came on for trial on July 26, 1966, and after a jury had been partially impaneled, it became apparent that there were not enough jurors

on hand to make it possible to obtain 12 disinterested jurors. At this time the court, on its own motion, quashed the panel and continued the cause until September 21, 1966, when a new jury was called, a jury selected, and the cause tried. No objection to this procedure was raised by the defendant until his motion for new trial was filed. The record does not disclose that the defendant was prejudiced in any manner by this procedure and it is fundamental that objections to the mode of selecting petit jurors must be made before trial to be of avail. Satterfield v. State, 172 Neb. 275, 109 N. W. 2d 415; Davis v. State, 31 Neb. 247, 47 N. W. 854.

The information in this case charged the defendant with stealing "five (5) or more, three to five year old Black Angus Cows, the property of Arthur Klemm." In connection therewith, defendant contends that the information was defective, and also the verdict of the jury, in that the information failed to allege, and the verdict of the jury failed to fix, the value of the cattle alleged to have been stolen. That there is no foundation for this contention may be readily ascertained. See, Leistritz v. State, 165 Neb. 220, 85 N. W. 2d 318; Buthman v. State, 131 Neb. 385, 268 N. W. 99; Cochran v. State, 122 Neb. 79, 239 N. W. 471; Halbert v. State, 116 Neb. 1, 215 N. W. 459.

It is also contended that there was a material variance in the evidence in that the information alleged the cattle to be from 3 to 5 years old whereas the evidence indicated that the 5 cattle identified were from 2 to 6 years old. Such variance is not material or prejudicial. See, Clark v. State, 102 Neb. 728, 169 N. W. 271; Brown v. State, 103 Neb. 271, 171 N. W. 906; Goldsberry v. State, 66 Neb. 312, 92 N. W. 906; Fullerton v. State, 148 Neb. 811, 29 N. W. 2d 618.

Issue is taken with instruction No. 7 of the court to the effect that for the purposes of this prosecution "the owner of cattle may be either the actual owner or one

who is in the actual peaceable possession of them, although such person may have no other property therein than the right of possession as against a thief." This is a correct statement of the law. See, Lovejoy v. State, 130 Neb. 154, 264 N. W. 417; 52 C. J. S., Larceny, § 13b, p. 811, § 81a (1), p. 886.

It is contended that the record fails to disclose a lack of consent by the owner to the taking of the cattle alleged to have been stolen. In this case the record discloses that the cattle were alleged to have been the property of Arthur Klemm and although the evidence as to ownership was conflicting, the undisputed evidence shows that Arthur Klemm was in sole possession of the cattle and that he did not consent to their being taken. In view of the law cited in the preceding paragraph, this would be sufficient; however, it is now the settled law of Nebraska that a lack of consent need not be shown in express terms but may be inferred from circumstances appearing in evidence the same as any other fact. See Holthus v. State, 138 Neb. 200, 292 N. W. 603.

Another assignment of error is based upon the fact that on cross-examination, defendant was questioned about his meeting with the witness Frank Ogle at Rapid City, South Dakota, in August of 1966, and the rebuttal evidence of the State indicating that at that time Frank Ogle was assaulted by the defendant and another individual because he had not left the country. The admission of this evidence, although damaging to the defendant's defense, does not constitute error because it was used for impeachment purposes or because it involved the additional offense of assault and battery. Evidence of threats made to, or of an assault made upon, a witness by a defendant is admissible. See, Blair v. State, 72 Neb. 501, 101 N. W. 17; Woodruff v. State, 72 Neb. 815, 101 N. W. 1114; Welter v. State, 112 Neb. 22, 198 N. W. 171; United States v. Howard, 228 F. Supp. 939; 22A C. J. S., Criminal Law, § 633, p. 483; Annotation, 62 A. L. R. 136.

It is contended that the court was in error in refusing to give a cautionary instruction regarding the testimony of the investigator for the Nebraska Brand Committee. Chapter 54, article 1, R. R. S. 1943, makes the Nebraska Brand Committee and its employees public officers. It is well settled that the mere fact a witness in a criminal prosecution is a regular public law enforcement officer does not entitle the accused to an instruction that the jury, in weighing his testimony, should exercise greater care than in weighing the testimony of other witnesses. See, Garcia v. State, 159 Neb. 571, 68 N. W. 2d 151; Grandsinger v. State, 161 Neb. 419, 73 N. W. 2d 632.

An instruction was given by the court that the jury was not to be concerned with or influenced by any consideration as to what punishment the defendant might receive in the event of his conviction. Such instruction was not erroneous. See, Witt v. State, 123 Neb. 799, 244 N. W. 395; Trimble v. State, 118 Neb. 267, 224 N. W. 274.

Another assignment of error is the refusal of the court to give a cautionary instruction on circumstantial evidence. Such an instruction was not required under the facts of this case. "Absence of any direct, incriminatory evidence is ordinarily made the test of the obligation of the trial court to instruct as to the probative value and manner of considering circumstantial evidence in a criminal case, and, if there is direct evidence of the principal facts essential to guilt, the failure to instruct in this regard is not error." Franz v. State, 156 Neb. 587, 57 N. W. 2d 139. See, also, Fisher v. State, 154 Neb. 166, 47 N. W. 2d 349.

Numerous other assignment of errors mentioned in the brief we find to be without merit and not requiring discussion.

The evidence in this case, although conflicting, is sufficient to sustain the verdict of the jury and no error appearing, the judgment of the district court should be and is affirmed.

AFFIRMED.