# IN THE COURT OF APPEALS OF IOWA

No. 13-1099
Filed October 15, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KINO KOCEIL DAVIS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Arthur E. Gamble,

Judge.


        Kino Davis appeals from his conviction of murder in the first degree.

**AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy and

Rachel C. Regenold, Assistant Appellate Defenders, for appellant.

        Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney

General, John P. Sarcone, County Attorney, and Nan Horvat and Jacqui

Livingston, Assistant County Attorneys, for appellee.


        Heard by Potterfield, P.J., and Tabor and Mullins, JJ.

**POTTERFIELD, P.J.**

Kino Davis appeals from his conviction of murder in the first degree. He alleges error in the district court's denial of his motion for judgment of acquittal, denial of his motion for a new trial, and admission of evidence over his objection.

## I. Factual and Procedural Background

Kathryn Mitchell supplied drugs to and used drugs with her friends, one of whom was Kino Davis. Another was Craig Bailey. Bailey visited Mitchell at her new apartment on Thursday, April 14, 2011. A man matching Davis's description was also at Mitchell's apartment.[1] Bailey had given Mitchell some money, and Mitchell showed it to him to confirm that she still had the cash. The other man may or may not have observed the cash when Mitchell showed it to Bailey. Bailey left the two of them at Mitchell's apartment. He returned later in the afternoon, but Mitchell did not answer the door. He left a written note for her and went home.

The next day, Friday, April 15, Bailey returned to Mitchell's apartment. When Mitchell once again failed to answer the door, Bailey reached in through a window and unlocked the door to let himself in. He found Mitchell lying dead in her living room. She had been brutally beaten and strangled; her body was bloody and bruised. He ran out, put some distance between himself and the apartment, and called the police to report what he had found.

Police investigation eventually ruled out Bailey as a suspect. DNA testing revealed that Mitchell had recently had sexual intercourse with a man named

---

[1] Bailey later provided the description matching Davis—a black man with many tattoos on his arm—but he could not definitively identify Davis as the man he saw at Mitchell's apartment.

Daniel Durham. Durham was also eventually eliminated as a suspect. Further testing revealed that Davis's DNA was in several places in Mitchell's apartment. Davis's DNA was found mixed with Mitchell's on a bloodstained pillow found by her body, on a bloody tissue, mixed with Mitchell's in a blood spot on the floor, and on a cigarette butt on the floor.

Police interrogated Davis on August 31, 2011. The interview was recorded. Davis admitted to knowing Mitchell. He first told officers that he had "heard" that she moved into her new apartment. Upon further questioning, he told them he had actually helped her move into the apartment. During the interview he offered—without the officers' prompting or suggestion—that she did not owe him money. He denied ever returning to the apartment after helping her move. When confronted with the DNA evidence found at the scene, he suggested that he may have cut himself while moving boxes. He did not communicate that he had any actual memory of an injury occurring. He otherwise denied hurting or killing Mitchell.

Around this time, while Davis was in jail, another inmate named Troy Riley reported that Davis told him he had "choked" a woman because "she owed him some money."

Trial began on May 10, 2013. During the trial, on May 17, Davis was put into a holding cell during the lunch recess. Durham was also in that same holding cell awaiting his call to the witness stand in Davis's trial. Davis approached Durham and asked him his name. Durham replied, "Dan." Davis then assaulted Durham. Durham required a trip to the hospital for stitches, and

another witness took the stand that afternoon instead of Durham as originally scheduled.

During the State's case in chief, the district court admitted testimony regarding Davis's assault on Durham over Davis's objection. The court also admitted the video recording of Davis's August 31, 2011 interrogation over Davis's objection.

On May 23, 2013, at the close of the evidence, Davis moved for judgment of acquittal. The district court denied the motion. On May 28, the jury returned a guilty verdict. On June 27, 2013, Davis filed a motion for a new trial. The district court denied the motion.

Davis now appeals the denial of both motions and the admission of the video recording and testimony regarding his assault on Durham.

**II. Scope and Standard of Review**

A motion for a judgment of acquittal is a challenge to the sufficiency of the evidence. Iowa R. Crim. P. 2.19(8)(a). A guilty verdict must be supported by substantial evidence, and we review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010).

We review the denial of a motion for a new trial for an abuse of discretion. *Id.* at 472. "Trial courts have wide discretion in deciding motions for a new trial." *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). An abuse of this discretion occurs only when "the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). "[A]ppellate review is limited to a

review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *Id.* at 203.

"We review evidentiary rulings for an abuse of discretion."[2] *State v. Nelson*, 791 N.W.2d 414, 419 (Iowa 2010). A trial court abuses its discretion if it admits evidence on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Id.*

### III. Motion for Judgment of Acquittal

Davis claims there is not sufficient or "substantial" evidence to support the jury verdict. "Substantial evidence is that upon which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *State v. Pace*, 602 N.W.2d 764, 768 (Iowa 1999). "[W]e consider all the evidence, that which detracts from the verdict, as well as that supporting the verdict." *State v. Hagedorn*, 679 N.W.2d 666, 669 (Iowa 2004). However, "[w]e review the evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *State v. Biddle*, 652 N.W.2d 191, 197 (Iowa 2002).

"[D]irect and circumstantial evidence are equally probative for the purposes of proving guilt beyond a reasonable doubt." *State v. Bentley*, 757 N.W.2d 257, 262 (Iowa 2008). "Evidence which merely raises suspicion, speculation, or conjecture is insufficient." *State v. Casady*, 491 N.W.2d 782, 787

---

[2] We note that hearsay rulings are reviewed for correction of errors at law rather than abuse of discretion. *State v. Dullard*, 668 N.W.2d 585, 589 (Iowa 2003). However, Davis does not contest the district court's characterization of the interrogation recording as non-hearsay on appeal. Rather, he asserts that the recording was more prejudicial than probative, rendering its admission a violation of rule 5.403. Therefore, we review both evidentiary claims for an abuse of discretion.

(Iowa 1992). But evidence—even circumstantial evidence—that raises "a fair inference of guilt as to each essential element of the crime" *is* sufficient to support the verdict. *Id.*

On appeal, Davis contends two aspects of the evidence foreclose support for the jury's guilty verdict: first, the State's witnesses were not credible; and second, the direct evidence is not conclusive.[3]

As to the credibility of the State's witnesses, the jury was free to find that the State's witnesses were credible or incredible. "The very function of the jury is to sort out the evidence presented and place credibility where it belongs." *State v. Blair*, 347 N.W.2d 416, 420 (Iowa 1984). The jury was present to hear the testimony and observe the witnesses, and it returned a guilty verdict. The finders of fact in this case believed the State's witnesses were sufficiently credible. Davis's bare assertion that the State's lay-witnesses were "addicts and felons" does not invalidate the jury's credibility determinations at trial.

Davis also contends that the direct evidence was not sufficient. He notes that there was no DNA evidence collected from the victim's neck and that some of his own DNA found at the scene is not conclusively derived from his blood. He reiterates his position at trial that his theory of the presence of his DNA—i.e. that

---

[3] Davis's argument on appeal does not identify which element or elements of the crime are allegedly not supported by substantial evidence. Our analysis of his argument is applicable to all four elements listed in the jury instructions, and we find that all are supported by substantial evidence. The four elements are:

> 1. On or about April 13–15, 2011, the defendant strangled and struck Kathryn Mitchell.
> 2. Kathryn Mitchell died as a result of being strangled and struck by the defendant.
> 3. The defendant acted with malice aforethought.
> 4. The defendant acted willfully, deliberately, premeditatedly and with a specific intent to kill Kathryn Mitchell.

he may have cut himself while helping the victim move into her new apartment—sufficiently explains away the circumstantial evidence presented. Davis avoids the evidence of his statement to a fellow inmate by simply describing it as unbelievable.

We find, however, that there was more than sufficient circumstantial evidence that would lead a rational fact-finder to conclude that Davis was guilty of the crime beyond a reasonable doubt. The State established that Davis shared a social relationship with the victim, a man matching Davis's description may have been the last person seen with the victim, and Davis's blood and DNA were in various locations throughout the victim's apartment when her body was discovered. The jury found Davis's account of the possible reasons for the presence of his DNA not credible.

There is substantial circumstantial evidence supporting Davis's guilty verdict. The district court did not err in denying the motion. We affirm the district court's denial of Davis's motion for judgment of acquittal.

**IV. Motion for a New Trial**

Davis asserts the guilty verdict is contrary to the evidence presented, and the district court therefore erred by denying his motion for a new trial. *See* Iowa R. Crim. P. 2.24(2)(b)(6). The district court may grant a motion for a new trial if the verdict is contrary to the "weight of the evidence," meaning "a greater amount of credible evidence supports one side of an issue or cause than the other." *Nguyen v. State*, 707 N.W.2d 317, 327 (Iowa 2005) (citations omitted).

Our supreme court has admonished trial courts to "exercise this discretion carefully and sparingly." *Ellis*, 578 N.W.2d at 659. "Except in the extraordinary

case where the evidence preponderates heavily against the verdict, trial courts should not lessen the jury's role as the primary trier of facts and invoke their power to grant a new trial." *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006).

Davis argues that the same facts he uses to show a lack of substantial evidence also demonstrate that the weight of the evidence indicates the victim was murdered by someone other than himself. However, Davis only presents circumstantial evidence (e.g., Bailey's purchase of a $500 prepaid Mastercard) and evidence offered for negative inference (e.g., some of his DNA was not proven to be derived from his blood). The district court did not believe this evidence was sufficient to tip the balance of the total weight of all the evidence in Davis's favor.

We cannot say the district court based its denial of the motion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. The district court did not abuse its discretion, and we affirm its denial of Davis's motion for a new trial.

### V. Evidentiary Motions

Davis claims two of the district court's evidentiary rulings were erroneous, necessitating a new trial. The district court admitted evidence that Davis assaulted one of the State's witnesses in a jail holding cell during a recess from the trial. It also allowed the State to play a video recording of the police interrogating Davis, which included several statements by the officers regarding the strength of their evidence against Davis, over Davis's objection.

Davis asserts the district court's bases for admitting these two pieces of evidence were legally erroneous. "When the trial court makes a ruling based on an erroneous application of the law, its ruling is clearly untenable." *Nelson*, 791 N.W.2d at 419. He argues each piece of evidence should have been excluded because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Iowa R. Evid. 5.403.

*A. Assault on Witness.* The district court admitted evidence of Davis's mid-trial assault on Durham by relying on Iowa Rule of Evidence 5.404(b):

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The court noted the list of "other purposes" in the rule is not exhaustive. It held "one purpose that may be a purpose for which the evidence is admissible under rule 5.404(b) is to demonstrate consciousness of guilt."

Our supreme court has held, "An attempt by a party to improperly, even illegally, influence a witness is thought to be an admission by conduct." *State v. Stufflebeam*, 260 N.W.2d 409, 412 (Iowa 1977). "Such an admission does have independent probative value on the issue to be tried." *Id.* Relying on the *Stufflebeam* language, the district court found Davis's assault on Durham was an attempt to influence a witness, an admission by conduct, and a demonstration of consciousness of guilt. The court therefore admitted the testimony as non-propensity other-acts evidence.

Davis argues the assault was the result of the mutual dislike between himself and Durham as evidenced by Durham's comments after a prior

deposition when Durham expressed regret at failing to attack Davis when he previously had a chance. There is no evidence, Davis argues, the assault was motivated by a desire to influence Durham's testimony, and the assault should not be considered an admission or evidence of consciousness of guilt.

In Iowa, our cases discussing this issue are factually distinct from the present case. The cases upon which the district court relied involved defendants who *overtly* attempted to influence a witness.[4] *See Stufflebeam*, 260 N.W.2d at 411 ("[D]efendant told [the witness] he did not like her turning him in or testifying against him and hit her with his fist."); *State v. McNeil*, No. 02-1469, 2003 WL 22200531, at *1 (Iowa Ct. App. Sept. 24, 2003) ("[Defendant] asked if [the witness] 'knew what [he] was doing' . . . [and] told him he could 'always change [his] story.'").

From the opposite viewpoint, the case cited by Davis at trial, *State v. Clay*, 264 N.W. 77, 81 (Iowa 1935), concerns a situation in which there was no evidence the defendant's subsequent assault upon a witness was intended to influence her testimony. The case before us does not fall neatly into either category.[5] There exists some evidence, though it is only circumstantial, that Davis's assault *may* have been intended to influence Durham's testimony.

---

[4] The district court also relied on *State v. Martin*, No. 07-2045, 2009 WL 249887, at *2 (Iowa Ct. App. Feb. 4, 2009). However, the *Martin* court's consideration of the issue is dicta presented as an alternative argument against an ineffective-assistance-of-counsel claim. The *Martin* court's analysis lacks sufficient factual background to meaningfully compare it with the instant case.

[5] The State has cited to case law from some of our sister states who have adopted a policy of categorically admitting evidence of a defendant's assault upon a witness. *See State v. Saiz*, 454 P.2d 152, 153 (Ariz. 1969); *State v. Nelson*, 152 N.W.2d 10, 15 (Neb. 1967). Because this policy runs contrary to our own case law, these extra-jurisdictional cases are not persuasive. *See Clay*, 264 N.W.2d at 81.

While the district court's inference that Davis intended to influence Durham's testimony does not enjoy direct supporting evidence such as that found in *Stufflebeam* and *McNeil*, we find the circumstantial evidence in the record is sufficient to support the district court's ruling. Davis was present at Durham's deposition, so he knew Durham could provide damaging testimony at trial. Davis saw Durham in the holding cell during the trial and confirmed his identity. Although Davis made no comment about the trial or any prospective testimony, the district court fairly inferred that Davis's reaction—the assault—was motivated by his belief that Durham planned to testify against him.

Because the court's inference that Davis intended to influence Durham's testimony is supported by circumstantial evidence, we do not disturb its ruling that the assault was an admission by conduct and evidence of consciousness of guilt. Based on that inference, the district court properly determined that the probative value of the testimony outweighed the danger of unfair prejudice or confusion of the issues. The district court's limiting jury instruction was crafted to ensure that the evidence was used only for its probative merits. We presume that a jury follows the court's instructions. *State v. Proctor*, 585 N.W.2d 841, 845 (Iowa 1998). There is no evidence that the jury in this case failed to do so.

The evidence of Davis's assault in these circumstances was admissible under rule 5.404(b) and was more probative than unfairly prejudicial under rule 5.403. The district court did not abuse its discretion.

*B. Recording of Interrogation.* The district court also admitted a video recording of Davis's initial interrogation by police, which included lengthy narratives by the interrogating officers describing and sometimes overstating the

strength of the evidence against Davis. Davis conceded that his own statements made in the course of the interrogation were admissible, but objected to some questions by police that he described as hearsay, prejudicial, and liable to be misused by the jury.[6]

The court admitted the evidence under Iowa Rule of Evidence 5.106, which provides, "When [a] . . . recorded statement, or part thereof, is introduced by a party, any other part . . . is admissible when necessary in the interest of fairness, a clear understanding, or an adequate explanation." Recordings of police interrogations may be presented in whole to place statements by the defendant in context. *See State v. Esse*, No. 03-1739, 2005 WL 2367779, at *3 (Iowa Ct. App. Sept. 28, 2005). Evidence admitted for this purpose is not hearsay (not presented for the truth of the matter asserted by the interrogating officers); however, a jury instruction limiting the scope of the evidence is required. *Id.*; *see also* Iowa R. Evid. 5.105. In this case, the district court issued a jury instruction to limit the evidence from use outside of the context of rule 5.106.

Davis urges us, however, to "look at the *real* purpose for the offered testimony" and determine "whether the statement is truly relevant to the purpose for which it is being offered, or whether the [recording of the interrogator's questions] is merely an attempt to put before the fact finder inadmissible evidence." *State v. Elliott*, 806 N.W.2d 660, 668 (Iowa 2011) (citations omitted).

---

[6] The State urges us to consider Davis's objection at trial a "standing objection" that was too vague to necessitate a ruling on the merits. We decline this invitation. Davis identified several specific statements by the officers to which he objected (e.g., "I know you got in a fight with her because you bled in the apartment"), and the district court issued its ruling on the merits of the objection. We therefore review the claim in kind.

He claims the probative value of the recording does not outweigh its unfairly prejudicial effect. He also noted before the district court that there was a substantial danger of the jury misusing the officers' statements as substantive evidence.

Davis notes two specific substantive statements made by the officers that were particularly susceptible to juror misuse: first, that the victim's neighbors confirmed Davis was alone with the victim on the day of the murder; second, that the only scientific explanation of the presence of Davis's DNA is that his blood comingled with the victim's blood at the time of the victim's death. Both of these statements were untrue.

Davis was permitted to contradict and test those statements through cross-examination of one of the officers. And the district court did issue a relevant jury instruction cautioning the jury that the officers' statements in the recording were not to be used for their substantive truth. However, we agree with Davis that this was insufficient to cure the substantial danger of jury misuse. Our supreme court has noted that statements by state officials, who are largely perceived to be "cloaked with governmental objectivity and expertise," create "a real danger the jury will be unfairly influenced." *State v. Huston*, 825 N.W.2d 531, 537–38 (Iowa 2013) (citations omitted). That danger was made manifest in this case when the State itself echoed the officers' assertion regarding the contemporaneous spilling of Davis's and the victim's blood during its closing argument.

Rule 5.106 does not provide trial judges unqualified discretion to admit large swaths of recorded statements by relying on a prosecutor's mere "rote

recitation that a statement is not offered for the truth of the matter asserted." *People v. Musser*, 835 N.W.2d 319, 332 (Mich. 2013).[7]  A court cannot admit recorded statements for the purpose of providing context if "there was no statement from [the] defendant for which the detective's statements provided context." *Id.* at 333.

If a recorded statement does not advance "fairness, a clear understanding, or an adequate explanation," it is not admissible under rule 5.106 even though it is included in a recording that contains other recorded statements that do.  Iowa R. Evid. 5.106(a).  And the recorded statements, like all relevant evidence, are subject to the rule 5.403 balancing test that compares the probative value of the statements to their danger of unfair prejudice and confusing the jury.

We find the district court's implicit ruling[8] that the probative value of the recording was not substantially outweighed by its prejudicial effect and danger of misleading the jury to be clearly untenable.  Its reliance on rule 5.106 and failure to analyze rule 5.403 demonstrate an abuse of discretion in admitting the recording.

Even so, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."  Iowa R.

---

[7] We note this case from the Michigan Supreme Court is not controlling law.  However, in the absence of our own supreme court's consideration of this issue, we have evaluated the Michigan Supreme Court's consideration of the policy implications of Michigan's analogue to rule 5.106 as it relates to the increasingly common practice of blanket admission of interrogation videos.  We find its reasoning persuasive and compatible with Iowa law.

[8] The district court did not explicitly mention or utilize the rule 5.403 balancing test in its ruling despite Davis's submission that the admission of the tape would run contrary to the rule.

Evid. 5.103(a). The requirement of affectation of a substantial right is also referred to as a "harmless-error analysis"—i.e., "error in an evidentiary ruling that is harmless may not be a basis for relief on appeal." *State v. Parker*, 747 N.W.2d 196, 209 (Iowa 2008). There are a number of factors to consider when making a determination of harmlessness, "including the existence of overwhelming evidence of guilt." *Id.* This factor is the dispositive consideration in Davis's case.

Even if the jury had not heard the interrogating officers' factually inaccurate statements regarding the neighbor-witnesses or science behind mixed DNA, the uncontroverted circumstantial evidence pointing towards Davis's guilt was powerful. Again, a man matching Davis's description may have been the last person seen with the victim according to trial testimony; Davis's non-sequitur assertion that the victim did not owe him money casts heavy suspicion and establishes his motive; and Davis admitted the assault to a fellow inmate. DNA evidence ruled out the other suspects. The officers' statements on the recording cannot be said to have tipped the balance of an otherwise evenly weighted record. Even if the district court had properly excluded the recorded interrogation, the remaining evidence constitutes overwhelming evidence of guilt. We therefore conclude the district court's error was harmless. We may therefore affirm the conviction in spite of the district court's error.

### VI. Conclusion

We find that there was substantial evidence to support the jury's verdict. The district court did not abuse its discretion in denying Davis's motion for a new trial because the weight of the evidence does not favor Davis. Neither did the district court abuse its discretion in admitting evidence of Davis's assault on a

witness.  Although the court did abuse its discretion in admitting the recording of Davis's interrogation with police, that error was harmless and therefore cannot be the basis for the relief sought.  We affirm.

**AFFIRMED.**