## HITTNER *v.* The State.

If a jury, in a criminal case, retire to consider of their verdict, in the charge of a bailiff who has taken a general oath to discharge his duties as such, and they afterward return a verdict, the same

will not be disturbed because the bailiff's oath was not in the precise form prescribed by law.

It is not error, on the trial of a prisoner for murder, to permit the State to prove that he attempted, while in jail, to escape, but was retaken.

On the trial of a defendant on an indictment for murder, it is error to charge the jury, without qualification, that, if the defendant made an unlawful attack, or got into a fight with the deceased, upon a sudden heat, and slew him in the controversy, he would be guilty of manslaughter, at any rate, because, even under such circumstances, the defendant would be entitled to the benefit of any retreat, flight, or withdrawal from the contest which he might, in good faith, have made, or attempted to make, although he was the aggressor in the first instance.

APPEAL from the *Floyd* Circuit Court.

HANNA, J.—Hittner was indicted for murder in the first degree; tried and convicted of manslaughter.

Several errors are assigned.

I. Upon the ruling of the Court in receiving and filing the verdict.

This is based upon the fact that the jury, while considering of their verdict, were in charge of a person sworn to " well and truly discharge his duties as bailiff to said jury according to law;" and who was not sworn in the form, it is insisted, that is prescribed by statute. Sec. 329, p. 113, 2 R. S. 1852. It is not shown that said jury or bailiff misbehaved. A motion to discharge the prisoner for the same cause was also overruled.

It appears to us the statute in question is directory to the officer. *People* v. *Cook,* 14. Barb. 259. 4 Seld. 88. 19 Wend. 143. His duty is thereby prescribed, and a performance thereof would devolve upon him, upon his accepting the place, and taking the general oath to discharge his duties.

It might be further said, that, even if this should be.

regarded as a technical error, it should not reverse the judgment. Sec. 160, p. 382, 2 R. S.

II. In overruling a motion for a new trial.

1. Because of the reception of improper testimony, viz.: the evidence of the sheriff and jailer, to the effect that while the defendant was in jail it was broken, and he and others attempted to escape, but were retaken. It had been shown that, at the time of the homicide, the defendant did not attempt to escape. These were circumstances for the consideration of the jury; perhaps, as the Court said to them, they did not "amount to much."

2. In the charges given and those refused. The defendant requested the Court to instruct in writing. This duty was performed. The defendant also asked special instructions, which were reduced to writing, but the Court refused to give them. The legal propositions intended to be advanced by the special charges appear to us, with perhaps one exception, to be conveyed in the general charge of the Court. The ideas are, apparently, the same, although the language in which they are couched is not. Gra. & W. on New Trials, 3d vol., 848.

The exception above indicated arises upon that part of the instruction in reference to the right of self-defense.

The charge given was that " If the parties quarrelled, and got into an unpremeditated fight, and, in the course of that fight, the defendant, without any previous malice, in the sudden heat of the contest, pulled out his knife, and stabbed the deceased, that would be manslaughter, and, in such a case as that, in the absence of malice, it would make no difference who gave the first blow. The doctrine of self-defense must be considered with reference to the condition of the parties at the time. If the defendant was unlawfully attacked by the deceased, then he might resist, and lawfully kill the deceased, in necessary self-defense, if he had reason to believe, and did believe, it was necessary to kill to save his own life,

Hittner *v.* The State.

or avoid considerable personal harm; but if the defendant himself made the unlawful attack, or if there was a fight upon a sudden quarrel, then the defendant, if he killed the deceased, could not escape on plea of self-defense. He would be guilty of manslaughter, at any rate, and might be guilty of murder, if the facts indicated malice."

The defendant objects to the latter part of the charge, and insists that it is not only not good law, but that it prejudiced his defense. This latter part of the charge, when considered in connection with the former part of the same, appears to be susceptible of this construction only, viz.: That the defendant would be guilty of manslaughter, if, in the absence of malice, he killed the deceased in a fight in which, first, he, the defendant, was the assailant, or, secondly, in a fight arising *out of* sudden heat, in which he did not strike the first blow.

But one witness testified as to the commencement of the fight in which the fatal blow was given. Several others testified in reference to its progress and termination. The witness who saw the whole transaction differed in his statements from those who saw a part only, as to that part, in this—those who saw the latter part only, stated that the deceased had the defendant against a fence, by the side of the highway, kicking him. The other stated that the whole transaction took place in the public highway, where the defendant pulled the deceased off his horse, whereupon the deceased struck him, and received the fatal stab. If the evidence of those who saw the latter part of the transaction only should prevail, the jury might have inferred that the defendant had retreated, or been pushed to the wall—that is, to the fence—and then, with a pocket-knife, gave the blow which proved fatal.

Whether he had, or had not, a legal right to strike that blow, depended, in the opinion of the Court, upon a question of fact, namely: Were they fighting upon a sudden heat? or was the defendant originally the assailant? If either question should be answered in the affirmative, then the defend-

ant had no such legal right, although he was thus pushed, according to the instructions given. The instructions asked were based upon the idea that if, at the time of the killing, the defendant had reasonable ground for belief that such act was necessary to save his own life, or prevent grievous bodily harm, he might so act. The origin of the fight is not noticed.

If A, a man of much strength, should, upon the spur of a sudden quarrel, strike B, a weak man, and, following up his advantage, should, in the commission of grievous bodily harm, receive a fatal, but unpremeditated, blow, should B receive the penalty of manslaughter? So if, in a like case, B should strike the first blow with his hand, and A, overstepping the bounds of mere defense, should proceed to commit such harm as should make it necessary for B to strike with a weapon to save his life, would he be guilty of manslaughter in thus slaying A?

One ought not to have brought upon himself the necessity which he sets up in his own defense. 1 Hawk. P. C. p. 82, sec. 22. *Vaiden v. Commonwealth*, 12 Grat. 717. *Haynes v. The State*, 16 Ga. 465. Or, if he has brought it on, he must put into actual exercise his duty of withdrawing from the place; that is, retreating to the wall, before he should be justifiable in striking the fatal blow. Foster, 227. *The State v. Hill*, 4 Dev. and Bat. 491. *The State v. Howell*, 9 Ind. 485. And this falling back to " the wall " must be, in good faith, a retreat or flight, and not a mere design to protect himself under the shield of the law. 1 Hawk. P. C. 479, 480. 2 Bishop's Crim. L. 565.

In view of these authorities, the ruling of the Court appears to have been correct in refusing the instruction asked; but it was wrong upon the latter part of the instruction given, in view of the evidence in the case. It was not right to say to the jury, without qualification, that if the defendant made an unlawful attack, or got into a fight with the deceased,

upon a sudden heat, and slew him in the controversy, he "would be guilty of manslaughter, at any rate."

The qualification of the charge, which we think should have been made, should have been directed to meet the settled principle of law above quoted: namely, giving the accused, under such circumstances, the benefit of his retreat, flight, or withdrawal from the contest, if the jury believed, from the evidence, that such was the fact, although he might have been the aggressor in the first instance.

As this instruction may have misled the jury in determining the value of the evidence given, the judgment will be reversed.

*Per Curiam.* — Judgment reversed, with orders to the clerk, etc.

*John H. Stotsenburg* and *Thomas M. Brown,* for the appellant.

*John P. Usher,* Attorney-General, and *Chambers Y. Pattison,* for the State.