JAMES L. KENNEDY V. STATE OF NEBRASKA.

FILED MAY 5, 1904. No. 13,650.

1. Evidence. Evidence examined, and *held* sufficient to sustain the verdict.

2. Burglary: EVIDENCE. Where one is arrested for the crime of burglary, evidence of what was found in his room at the time

of his arrest, together with his conduct and statements on that occasion, is proper and competent as tending to show his consciousness of innocence or guilt, as the case may be.

3. **Evidence of Attempts to Escape.** The attempts of the accused to escape, while confined in jail awaiting his trial, may be shown as an inculpatory circumstance properly to be considered by a jury, and to be given such weight as it seems fairly entitled to, with the other evidence introduced at the trial, in determining the question of his guilt or innocence.

ERROR to the district court for Colfax county: JAMES A. GRIMISON, JUDGE. *Affirmed.*

*James B. Kelkenney, W. I. Allen* and *E. D. Hodsdon,* for plaintiff in error.

*Frank N. Prout, Attorney General,* and *Norris Brown,* contra.

BARNES, J.

In the night season of the 17th day of April, 1903, the store house of Peter Vetter, and bank building of Englebert F. Folda, situated in the village of Rogers in Colfax county, in this state, was broken into; the vault of the bank, in which the safe containing the bank's money was situated, was entered by tunneling a hole through the brick wall thereof; the safe was wrecked by explosives, and there was taken therefrom, and carried away, the sum of $2,200 in lawful money of the United States, the property of the said Folda. On the first day of June, following, James L. Kennedy was arrested, in the city of Omaha, taken to Colfax county, and was there charged with the commission of the crime above described. His trial in the district court for that county resulted in a verdict of guilty, as charged in the information; and he was thereupon sentenced by the court to imprisonment in the state penitentiary for a period of seven years. From that judgment and sentence he prosecuted error to this court, and will hereafter be called the plaintiff.

His first contention is that the evidence is not sufficient

to sustain the verdict. And it is strenuously urged that no facts or circumstances were disclosed that in any manner connected him with the crime charged. After making ample proof of the commission of the crime, the state introduced evidence from which it appeared, beyond a reasonable doubt, that the plaintiff was seen in Rogers on the morning before the robbery occurred, standing in front of the bank and looking into the building from a point where he could see the location of the safe, through the open vault door. He was accompanied by a person described as Frank Sherwood. About six o'clock the next morning, plaintiff and Sherwood were seen by several persons coming into North Bend, a town on the Union Pacific railroad, seven miles east of Rogers. They were traveling on foot, entered the town from the west, went to the depot and boarded the first train which came along. It was also shown that these persons had been frequently seen together in North Bend and Rogers; that they had been hanging around Columbus, Fremont, Grand Island and Aurora for about two months next before the robbery took place; that once, at least, during that time, and just before the crime was committed, plaintiff had visited Omaha for a day or two. It was further shown that these parties were not engaged in any business whatever; that they frequented the saloons in those towns, and spent most of their time in drinking and playing cards; that the plaintiff, for a considerable time, had rented a room at a restaurant in North Bend, called "Maloney's Place." It further appeared that the plaintiff had no money before the robbery occurred, and that immediately thereafter he had plenty of it. It was shown that he had a wife in the city of Omaha with whom he corresponded, and occasionally visited; that they lived in a rented flat on North 16th street; that immediately after the robbery they sold their furniture, which cost them $350, for the small sum of $65, the plaintiff stating, as an excuse therefor, that his wife was ill and he desired to take her to Hot Springs, Arkansas; that, in giving the bill of sale for the furniture to the purchaser,

they signed their names thereto as James Bardsley and Mabel Bardsley; that, accompanied by Frank Sherwood, and one whom he called his wife, they went to Hot Springs, where they all remained until the last of May, when they returned to the city of Omaha. Certain letters were introduced in evidence, written by the plaintiff to his wife while he was in Grand Island and North Bend, which contained statements well calculated to arouse suspicion. For instance, in the letter written from Grand Island, plaintiff said to his wife, "that they had done no business last night, because it snowed." In another letter he stated to her, that he had been out the night before and got "a short bunch of money." It was further shown that, about three days before the robbery occurred, the plaintiff purchased fifty feet of tape fuse, of Waldridge & Clark, dealers in sporting goods, powder, dynamite and ammunition in the city of Omaha, together with some dynamite caps and a quantity of explosive containing seventy-five per cent. of nitroglycerin. There was found in the vault, near the safe, tape fuse, like that purchased by the plaintiff, some caps, a small, hard rubber syringe, some soap, some court plaster, some cotton, and the tools which had been used to tunnel through the wall, and to prepare the safe to receive the explosive. These tools had been stolen from a blacksmith shop near the bank building. It was also shown that the explosive used in wrecking the safe was composed largely of nitroglycerin. When the officers went to the house where the plaintiff and his wife were stopping to make the arrest, they rapped on the door, and thereupon they heard the plaintiff go out of a back window. One of them ran around the house, chased him down one alley and part way up another, finally overtaking him. He appeared to drop something or throw something away, and, upon being questioned, said that his name was Clayton, that he had just come into town on the Missouri Pacific, and that he worked for the government. When they returned to the house he changed his statement, and claimed that his name was Kennedy,

and that he worked for one George Moore. After accused was taken to the station, the officers searched the room occupied by him, and found therein, among other things, a grip sack containing three revolvers; they then went to the place where he was overtaken and found another revolver, which he had either dropped or thrown away when he was arrested. Upon a more careful search in the room there was found, under the sink or washbasin, some tape fuse, like that found near the wrecked safe, some cotton, a hard rubber syringe, and two small bottles of explosive, similar to that used in wrecking the safe in the bank building at Rogers. So that the circumstantial evidence seemed amply sufficient to connect the plaintiff with the commission of the crime. But whatever it lacked, if anything, was supplied by the plaintiff himself upon his cross-examination. After the state had rested, he offered himself as a witness, and attempted to explain away the incriminating circumstances, and it may be said that his explanation was one which certainly did not explain. The story he told of his visits to the different towns near by and surrounding Rogers; the account that he gave of himself and of the man Sherwood, and his unsuccessful attempt to account for the money which he still had in his possession when arrested, and the sums that he had spent in his trip to Hot Springs, together with his statement that he did not know what he meant by the expressions above quoted, which were contained in his letters to his wife, left no doubt, in the minds of the jury, of his guilt. After a careful and searching examination of the record, we are constrained to hold that the evidence was amply sufficient. to sustain the verdict, and this assignment of error must fail.

It is next claimed that the court erred in admitting the testimony of the witnesses Ferris and Dempsey, regarding the finding of revolvers in the room occupied by the plaintiff and his wife in the city of Omaha. This evidence was received in connection with the description of what the officers found in his room, at the time of the plaintiff's

52

arrest; that part of it relating to the revolvers was objected to, but the objection was not kept good, and no motion was ever made to strike it out of the record. All of the testimony relating to what was found in the room, which articles included the revolvers, was afterwards detailed several times, without objection, both upon direct and cross-examination, and the plaintiff attempted to explain his possession of the revolvers, as well as the other things, when he testified in his own behalf. Again, it was proper and competent to show the situation, the surroundings and what was found in the room of the accused when he was arrested. This could not well be done without speaking of the revolvers. Evidence of this kind, where it has a bearing on or a relation to the facts constituting the crime charged, is always admissible, in a case like the one at bar, because it has a bearing on the conduct of the party accused, and, to some extent, may show on his part a consciousness of innocence or of guilt, as the case may be.

Lastly, it is contended that the court erred in admitting the evidence of the witness Van Housen, wherein he detailed the plaintiff's attempts to escape from the jail where he was confined, while awaiting his trial. In *Williams v. State*, 69 Neb. 402, it was held:

"An attempt to escape by one under arrest accused of crime is an inculpatory circumstance properly to be considered by a jury and to be given such weight as it seems fairly entitled to, with the other evidence introduced at the trial, in determining the question of the guilt or innocence of the accused." See also *George v. State*, 61 Neb. 669. *Hittner v. State*, 19 Ind. 48.

It is apparent from an examination of the record that the plaintiff had a fair trial, and, there being no prejudical error shown, it follows that the judgment of the district court should be, and is, hereby

AFFIRMED.