STATE OF NEBRASKA, APPELLEE, V. RICHARD IRISH, APPELLANT.
391 N.W.2d 137

Filed August 1, 1986.    No. 85-440.

Richard L. McCoy, for appellant.

Robert M. Spire, Attorney General, and Calvin D. Hansen, for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

A jury in the district court for Dakota County found Richard Irish guilty of manslaughter (Neb. Rev. Stat. § 28-305 (Reissue 1985)), for which Irish was sentenced to 5 to 10 years' imprisonment. Irish appeals both the conviction and sentence.

On January 22, 1984, a vehicle operated by Irish collided with a pickup truck on a two-lane highway near South Sioux City, Nebraska, killing Irvin Dickes, driver of the pickup. On February 21 the State filed an information charging Irish with motor vehicle homicide. See Neb. Rev. Stat. § 28-306(3) (Reissue 1985). Irish filed a pretrial motion to suppress a blood sample extracted from him shortly after the accident. The court sustained Irish's motion and afforded the State time to appeal the suppression order.

The State moved to dismiss the prosecution "for the reason that the Plaintiff now has insufficient evidence upon which to obtain conviction against the Defendant if the case went to trial." Pursuant to the State's motion, the court dismissed the case. However, immediately after dismissing the first case against Irish, the State promptly filed a second information pertaining to the same accident but charging Irish with manslaughter in violation of § 28-305.

Pursuant to Neb. Rev. Stat. § 29-1817 (Reissue 1985), Irish filed a plea in bar. Section 29-1817 in pertinent part provides:

> The accused may then offer a plea in bar to the indictment that he has before had judgment of acquittal, or been convicted, or been pardoned for the same offense; and to this plea the county attorney may reply that there is no record of such acquittal or conviction, or that there has been no pardon.

Irish's "plea in bar," subtitled "Double Jeopardy: Autrefois Convict," alleged that such plea "should be sustained as a

matter of the Due Process of Law." In his plea in bar, Irish asserted that the State's filing the second information "would place [him] under double jeopardy." The plea in bar did not specifically raise any question concerning constitutional or statutory speedy trial provisions. See, Neb. Const. art. I, § 11; Neb. Rev. Stat. § 29-1207 (Reissue 1985); U.S. Const. amend. VI.

Irish then requested a change of venue, claiming that "undue adverse, pre-trial publicity" made it "impossible to seat a fair and impartial jury." To support that claim Irish called three Dakota County residents employed at the Dakota County Courthouse, who testified they had heard about Irish's case and formed an opinion that he was guilty of motor vehicle homicide. Irish also introduced copies of various newspaper reports describing the accident and detailing Irish's prior conviction on a charge of motor vehicle homicide in Iowa. The court overruled Irish's motion for change of venue.

Irish took the deposition of Donald Derby, an acquaintance of Dickes', who had been with Dickes the day of the accident. Derby, suffering from emphysema, was confined in a hospital bed, where he received various medications and regular intervals of oxygen. At the time of the deposition, Derby's ability to recall events depended on the amount of oxygen being taken into Derby's system. During examination by Irish's counsel, Derby was unable to recall the date of the accident, although he did vaguely recall seeing Dickes on a farm sometime before the fatality. When asked whether Dickes had been drinking "that day," Derby responded, over objection: "Yes. The week before . . . . Sir, he drank all his life . . . ." When further asked whether Dickes' truck had headlights, Derby replied, over objection, that the truck "[d]idn't have no lights." Throughout the direct examination, the State objected that Derby was incompetent to testify regarding events occurring on the date of the accident. During questioning by the county attorney on cross-examination, Derby was unable to recall, with any certainty, the current date on which the deposition was being taken, or the month or the year, and had some difficulty remembering his birth date. The State filed a motion in limine to exclude Derby's deposition, arguing that Derby was an

"incompetent" witness and that his deposition testimony would be "confusing" to the jury. The court sustained the State's motion, noting that the testimony bore no "reasonable relationship" as a description of the subject accident.

At trial the State adduced evidence from which the jury could reasonably conclude that Irish had been drinking alcohol on the evening of the accident and had allowed his vehicle to cross the centerline of the highway, causing the collision with the oncoming pickup driven by Dickes.

The State called Dr. Steven Shook, the physician who treated Irish following the accident. During direct examination, Dr. Shook testified that certain statements made by Irish were not in response to questions "relevant to diagnosis or treatment of [Irish's] physical condition" and that the information imparted by such statements was not a necessary aspect of any treatment which the physician administered to Irish, since Irish was talkative, mobile, and otherwise alert. The State sought to elicit from Dr. Shook testimony concerning Irish's statements made to the doctor during examination at the hospital, namely, statements regarding the issue of Irish's intoxication. On the basis that such statements were inadmissible, see Neb. Evid. R. 504 (Neb. Rev. Stat. § 27-504 (Reissue 1985)) (physician-patient privilege), Irish objected. When the court overruled Irish's objection, Dr. Shook testified that Irish had stated that he "had been drinking," that he "had 4 beers," and that he "had lost control [of his vehicle] and hit the other person headon."

After conviction on the charge alleged, Irish was sentenced on May 7, 1985, to imprisonment for a term of 5 to 10 years.

Irish claims the district court erred in (1) overruling the "plea in bar," (2) overruling the motion for change of venue, (3) excluding Donald Derby's deposition, (4) allowing Dr. Shook to testify regarding the alleged privileged communications, and (5) rejecting Irish's requested instructions. Irish also contends that the court imposed an excessive sentence.

Irish first contends the court erred in not dismissing the proceedings as requested in his "plea in bar." Specifically, Irish claims that the State's dismissal of the first information (motor vehicle homicide) and the constitutional prohibition against

double jeopardy bar prosecution of the offense (manslaughter) alleged in the second information. See, Neb. Const. art. I, § 12; U.S. Const. amends. V, XIV.

The constitutional guarantee against double jeopardy applies in criminal prosecutions when jeopardy has attached in a prior criminal proceeding, the defendant is being retried for the same offense, and the prior proceedings terminated jeopardy. See *State v. Bostwick*, 222 Neb. 631, 385 N.W.2d 906 (1986). "In a case tried to a jury, jeopardy attaches when the jury is empaneled and sworn." *Id.* at 642, 385 N.W.2d at 914. See, also, *Crist v. Bretz*, 437 U.S. 28, 38, 98 S. Ct. 2156, 57 L. Ed. 2d 24 (1978) ("[t]he federal rule that jeopardy attaches when the jury is empaneled and sworn is an integral part of the constitutional guarantee against double jeopardy"). On the other hand, generally, jeopardy does not attach to a criminal prosecution merely because the State has filed an information and a court has conducted a preliminary hearing and disposed of pretrial motions. See, *Skinner v. Jensen*, 178 Neb. 733, 135 N.W.2d 134 (1965); *State v. Hutter*, 145 Neb. 798, 18 N.W.2d 203 (1945). Where the State properly obtains dismissal of an information before jeopardy attaches, the constitutional double jeopardy clause does not bar the State from refiling another information pertaining to the same offense. See, *Allman v. State*, 677 P.2d 832 (Wyo. 1984); *Ward v. State*, 290 Md. 76, 427 A.2d 1008 (1981); *Bellizzi v. Superior Court*, 12 Cal. 3d 33, 524 P.2d 148, 115 Cal. Rptr. 52 (1974). In the present case Irish was not brought to trial under the first information, jeopardy did not attach, and the double jeopardy bar was not implicated in the prosecution of Irish on the manslaughter charge.

Irish next contends the court erred in overruling his motion for change of venue. A motion for change of venue in a criminal case is addressed to the sound discretion of the trial court, whose ruling will not be disturbed on appeal unless a clear abuse of discretion is shown. *State v. Rife*, 215 Neb. 132, 337 N.W.2d 724 (1983). A trial court abuses its discretion in denying a motion for change of venue where the defendant establishes that local conditions and pretrial publicity make it impossible to secure a fair trial. See *State v. Fallis*, 205 Neb. 465, 288 N.W.2d

281 (1980). Irish contends, generally, that pretrial publicity precluded his receiving a fair trial in Dakota County. The record, however, consisting of a handful of news stories and the testimony of three courthouse employees, hardly compels a finding that any pretrial publicity prejudiced Irish's right to a fair trial. We find no abuse of discretion in the court's refusal to grant Irish's motion for change of venue.

Irish also maintains the court erred in sustaining the State's motion in limine, excluding from evidence the deposition testimony of Donald Derby. Irish argues, in particular, that the alleged deficiencies in Derby's competency affected the weight but not the admissibility of his testimony.

Rule 104 of the Nebraska Evidence Rules (Neb. Rev. Stat. § 27-104 (Reissue 1985)) provides that "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the judge . . . ." The admission or exclusion of evidence is a matter left largely to the sound discretion of the trial court, whose ruling will be upheld absent an abuse of discretion. *State v. Norfolk*, 221 Neb. 810, 381 N.W.2d 120 (1986).

During the deposition, Derby could not recall the date of the accident and was unable, generally, to focus on events surrounding the accident. Derby, as a result of his medical condition, could not readily recite the current date, month, or year, which may not have definitively disqualified Derby as a witness but indicates a lack of awareness. The record supports a conclusion that Derby did not possess or could not articulate personal knowledge or relevant matters pertinent to the accident.

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. This rule is subject to the provisions of section 27-703, relating to opinion testimony by expert witnesses.

Neb. Evid. R. 602 (Neb. Rev. Stat. § 27-602 (Reissue 1985)). Derby's recollections, moreover, were not specifically linked to

the date of the accident. The district court may have concluded that Derby's testimony was irrelevant, see Neb. Evid. R. 401 (Neb. Rev. Stat. § 27-401 (Reissue 1985)), or that the probative value of the offered evidence was "substantially outweighed by the danger of . . . confusion of the issues," Neb. Evid. R. 403 (Neb. Rev. Stat. § 27-403 (Reissue 1985)) (exclusion of relevant evidence). We do not consider whether Derby's deposition was otherwise inadmissible hearsay or an exception to the hearsay rule. See Neb. Evid. R. 804 (Neb. Rev. Stat. § 27-804 (Reissue 1985)) (deposition testimony admissible as exception to hearsay rule where the witness is "unable to be present or to testify at the hearing because of . . . then existing physical or mental illness" and where the opposing party has "an opportunity to develop the testimony by direct, cross, or redirect examination"). Under the circumstances of this case, we find no abuse of discretion in the court's sustaining the motion in limine for exclusion of the deposition testimony given by Derby.

Irish next argues the court erred in allowing Dr. Shook to testify concerning statements made by Irish during postaccident medical examination. Irish argues his statements were privileged communications inadmissible under Neb. Evid. R. 504.

The privilege set forth in rule 504 protects the confidential communication between a physician and his or her patient. See *Branch v. Wilkinson*, 198 Neb. 649, 256 N.W.2d 307 (1977). As characterized in rule 504(2), a patient's privilege "to prevent any other person from disclosing confidential communications" extends only to communications "made for the purposes of diagnosis or treatment of his physical, mental or emotional condition." Therefore, "To be privileged, information obtained during the existence of a physician-patient relationship must be necessary to enable the physician to properly discharge his duties." *Branch v. Wilkinson, supra* at 658, 256 N.W.2d at 313. Where the information provided the physician does not pertain to the treatment or diagnosis of the patient, the policy underlying the physician-patient privilege is not violated by allowing disclosure, and the privilege should not be employed to remove from the jury's consideration otherwise probative and admissible evidence.

During his testimony, Dr. Shook stated unequivocally that he did not seek information from Irish regarding intoxication as a factor, element, or circumstance concerning the diagnosis or treatment of Irish. A party attempting to exclude evidence on the basis of the physician-patient privilege, prescribed by Neb. Evid. R. 504, has the burden of proving that the information obtained by the physician falls within the strict ambit of that rule of evidence. See *Branch v. Wilkinson, supra.* Irish produced no contradiction regarding Dr. Shook's testimony which placed Irish's communications outside the scope of the physician-patient privilege. The court did not err in allowing Dr. Shook to testify regarding matters not affecting the doctor's treatment and diagnosis of Irish.

Irish's final attack upon his conviction involves the court's refusal to submit to the jury several of Irish's requested instructions. Irish, however, does not refer to any particular rejected instruction, nor does he object to a specific instruction given by the court. Where a party contends the trial court erred in refusing to give a requested instruction, such party bears the burden of showing that he was prejudiced by the court's refusal and that the tendered instruction is both a correct statement of the law and applicable to the facts and evidence in the case. See *State v. Lingle*, 209 Neb. 492, 308 N.W.2d 531 (1981). Irish has failed to substantiate any possible claim involving the court's refusal to give the requested instructions.

Having rejected all of Irish's claimed errors affecting the verdict returned by the jury, we affirm Irish's conviction for manslaughter.

Irish also claims the court imposed an excessive sentence and refers to *State v. Roth*, 222 Neb. 119, 124, 382 N.W.2d 348, 352 (1986), wherein this court held that "[t]he maximum penalty of confinement that may be imposed upon a person convicted of manslaughter resulting from his operation of a motor vehicle is 6 months' imprisonment in the county jail." *Roth* controls the sentence to be imposed for Irish's manslaughter conviction in this case; that is, Neb. Rev. Stat. § 39-669.20 (Reissue 1984) prescribes the maximum penalty which may be imposed under the circumstances. Therefore, the sentence imposed by the district court is excessive and is set aside. We remand this matter

to the district court for sentencing consistent with *Roth* and as provided in § 39-669.20.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDING.

KRIVOSHA, C.J., participating on briefs.