STATE OF NEBRASKA, APPELLEE, V. JOHNNY DON CLANCY, APPELLANT.

398 N.W.2d 710

Filed January 2, 1987.    No. 86-531.

Arthur C. Toogood, Adams County Public Defender, for appellant.

Robert M. Spire, Attorney General, and Janie C. Castaneda, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Shanahan, J.

Johnny Don Clancy appeals his conviction in a jury trial and sentence to imprisonment for a term of 20 months to 5 years for violating the Nebraska Criminal Code, Neb. Rev. Stat. § 28-517 (Reissue 1985), which provides: "A person commits theft if he receives, retains, or disposes of stolen movable property of another knowing that it has been stolen, or believing that it has been stolen, unless the property is received, retained, or disposed with intention to restore it to the owner."

In accordance with the language found in § 28-517, the information charged that Clancy received, retained, or disposed of stolen property belonging to Todd Burgess and having a value more than $300, a crime which is a Class IV felony. See Neb. Rev. Stat. § 28-518(2) (Reissue 1985). Burgess' property was a 65-horsepower Mercury outboard motor.

Clancy claims the following errors occurred at his trial: (1) Insufficient evidence on the value of the outboard motor in question; (2) Improper admission of evidence (testimony of Jane DeVaney concerning Clancy's telephone call to her); (3) Failure to grant a mistrial; and (4) Failure to grant a directed verdict at the close of all evidence. Clancy also contends that the sentence imposed is excessive.

To prove the value of Burgess' outboard motor, the State called Leonard Heil as a witness. Heil owned Heil Marine Center, a business involving sales, purchases, and appraisals of new and used outboard motors, including Mercury outboards. After he had inspected Burgess' motor before trial, Heil testified that he would buy that outboard for $250 in the hope that the motor might be sold in the course of Heil's business, giving Heil a profit on resale. Heil then testified that the Burgess outboard, "as is," had a "fair market value" of, or was worth, $400 "on the open market." Clancy argues, "The evidence clearly established that the price which would be paid for the motor by a willing, knowledgable buyer was only

$250.00 and not over $300.00 as charged in the information." Brief for Appellant at 6.

*State v. Hayes*, 187 Neb. 325, 190 N.W.2d 621 (1971), involved prosecution for receiving or buying stolen goods which had a value greater than $100 (grand larceny), in violation of Neb. Rev. Stat. § 28-513 (Reissue 1964). In *Hayes* this court stated at 326, 190 N.W.2d at 622:

> The value of the goods in question is an essential element of the crime and like all other elements thereof the evidence must be sufficient to support a finding of the necessary value beyond a reasonable doubt.
>
> This and other courts have long held that where value of goods is an element of the crime charged and there is a market for the goods, the value to be proved is the market value at the time and place. [Citations omitted.]

See, also, *State v. Redding*, 213 Neb. 887, 331 N.W.2d 811 (1983); *State v. Weik*, 206 Neb. 217, 292 N.W.2d 289 (1980).

Although Heil initially indicated that, in conjunction with his business activity, he would pay $250 for the Burgess outboard, he also testified about the Burgess outboard in terms of "fair market value" and its value "on the open market," thereby distinguishing "market value" from the price he might pay as a motor merchant anticipating a profitable resale of the motor.

> In determining whether evidence is sufficient to sustain a conviction in a jury trial, [the Supreme Court] does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented to a jury—all of which is within a jury's province for disposition. A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict.

*State v. Schott*, 222 Neb. 456, 462, 384 N.W.2d 620, 624-25 (1986).

Heil's testimony supplied the jury with relevant evidence from which a jury could reasonably find that the value of Burgess' outboard motor was "three hundred dollars or more." See § 28-518(2).

Next, Clancy complains that his telephone call to Jane

DeVaney was erroneously admitted as evidence. According to her testimony, for 3 years Jane DeVaney had been acquainted with Clancy, who dated DeVaney's daughter. About 11 p.m. on an unspecified date early in December 1985, Clancy brought a Mercury outboard motor to DeVaneys' home and asked to leave the motor in the DeVaney garage. Sometime later, Jane DeVaney became suspicious about the motor and "thought it might have been stolen." On February 4, 1986, she telephoned the Adams County Sheriff's Department concerning the outboard motor. In response to Mrs. DeVaney's call, Deputy Larry Peterson came to the DeVaney home on February 4 to investigate, and later transported the outboard to the basement of the Adams County Courthouse, where Burgess identified the motor as his missing and stolen property. At the sheriff's office on the evening of February 5, Deputy Peterson interrogated Clancy concerning the Mercury motor. After his arrest Clancy posted bond, was released from custody, and, in a telephone call to Jane DeVaney, said "he was going to come over and kill Gary and I, or else have our house blown up." Gary is Jane DeVaney's husband. On the basis of relevancy Clancy objected to Jane DeVaney's testimony about the telephone call, and when that objection was overruled, Clancy requested a mistrial, which the court denied. In his testimony Clancy never denied the telephone call to Jane DeVaney or the contents of that call as testified by her. In pertinent part Neb. Rev. Stat. § 28-919 (Reissue 1985) states:

(1) A person commits an offense if, believing that an official proceeding or investigation of a criminal matter is pending or about to be instituted, he attempts to induce or otherwise cause a witness, informant, or juror to:

. . . .

(b) Withhold any testimony, information, document, or thing; . . .

. . . .

(2) Tampering with witnesses, informants, and jurors is a Class IV felony.

Clancy contends: "Since Appellee did not establish that [the telephone call to Jane DeVaney] shows guilty knowledge or any of the other permitted purposes the evidence only went to prove

the bad character of the Appellant and as such under the provisions of <u>Neb. Rev. Stat.</u> §27-404(2) is not admissible." Brief for Appellant at 8.

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Evid. R. 401 (Neb. Rev. Stat. § 27-401 (Reissue 1985)). See, also, *State v. Robertson*, 219 Neb. 782, 366 N.W.2d 429 (1985).

Neb. Evid. R. 404(2) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Neb. Rev. Stat. § 27-404(2) (Reissue 1985).

> Rule 404(2) of the Nebraska Evidence Rules is an inclusionary rule permitting the use of relevant, specific acts for all purposes except to prove character of a person in order to show that such person acted in conformity with character. Thus, Rule 404(2) permits evidence of other acts if such acts are relevant for any purpose other than to show a defendant's propensity or disposition to commit the crime charged.

*State v. Stewart*, 219 Neb. 347, 351, 363 N.W.2d 368, 371 (1985). See, also, *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985).

The "purposes" set forth in Neb. Evid. R. 404(2) are not exhaustive or mutually exclusive but are illustrative only, and are not pigeonholes for admission of evidence pertaining to "other acts." See, *State v. Craig, supra; State v. Stewart, supra*.

> However, Rule 404(2) is subject to the overriding protection of Rule 403 of the Nebraska Evidence Rules [Neb. Rev. Stat. § 27-403 (Reissue 1985)] (exclusion, if probative value is substantially outweighed by danger of unfair prejudice, confusion of issues, misleading the jury, causing undue delay, wasting time, or needlessly presenting cumulative evidence).

*State v. Craig, supra* at 77, 361 N.W.2d at 213 (1985).

The admission or exclusion of evidence is a matter within the sound discretion of the trial court, whose ruling on an evidential question will be upheld unless such ruling constitutes an abuse of discretion. *State v. Bostwick,* 222 Neb. 631, 385 N.W.2d 906 (1986).

In Clancy's case the burden was on the State to prove, beyond a reasonable doubt, that Clancy, knowing or believing that the Mercury outboard motor had been stolen, received or retained the outboard motor without his intention to restore the motor to its owner. See § 28-517.

The mental element involved in the offense charged against Clancy, "knowing" or "believing" that the outboard had been stolen, is crucial for commission of the crime charged. In the context found, Clancy's telephone call to Jane DeVaney was an attempt to influence or discourage any further informational activity by DeVaney relative to the pending charge against Clancy or his eventual trial for the crime charged. Would evidence of the telephone call to Jane DeVaney entitle a reasonable juror to believe that it was more probable that Clancy was conscious or knew that the outboard motor had been stolen? See Neb. Evid. R. 401 (relevant evidence; defined). See, also, McCormick on Evidence § 185 (E. Cleary 3d ed. 1984). If the answer to that question is in the affirmative, the telephone call has probative value and is admissible as relevant evidence.

Probative value is a relative concept and involves a measurement of the degree to which the evidence persuades the trier of fact that a particular fact exists and the distance of that particular fact from the ultimate issue in the case. See *State v. Bostwick, supra.*

Before enactment of the Nebraska Evidence Rules in 1975, this court ruled that a defendant's act occurring after commission of a crime was a relevant circumstance from which an inference of the defendant's guilt may be drawn. For instance, in *Kennedy v. State,* 71 Neb. 765, 99 N.W. 645 (1904), evidence of an attempted escape from jail by a defendant, awaiting trial, was admissible on the " 'question of the guilt or innocence of the accused.' " 71 Neb. at 770, 99 N.W. at 646. In

*Crowell v. State*, 79 Neb. 784, 113 N.W. 262 (1907), this court held that the defendant's attempt to induce a witness to leave the state and refrain from testifying at the defendant's trial was admissible in " 'determining the guilt or innocence of the defendant.' " 79 Neb. at 785, 113 N.W. at 262. *State v. Nelson*, 182 Neb. 31, 152 N.W.2d 10 (1967), involved a situation where, pending trial, the defendant "drove [the witness] out into the country where defendant said: '* * * he was going to whip' " the witness and then assaulted the witness. 182 Neb. at 37, 152 N.W.2d at 14. In *Nelson* this court stated: "Evidence of threats made to, or of an assault made upon, a witness by a defendant is admissible." 182 Neb. at 39, 152 N.W.2d at 15.

Therefore, in view of the Nebraska Evidence Rules, this case presents a question of first impression: Is a defendant's attempted intimidation or intimidation of a State's informant or witness admissible under Neb. Evid. R. 404(2)?

Referring to conduct as evidence of guilt, Wigmore has expressed: "No one doubts that the state of mind which we call 'guilty consciousness' is perhaps the strongest evidence . . . that the person is indeed the guilty doer; nothing but an hallucination or a most extraordinary mistake will otherwise explain its presence." 2 J. Wigmore, Evidence in Trials at Common Law § 273(1) at 115 (J. Chadbourn rev. 1979). "There are two processes or inferences involved—from conduct to consciousness of guilt, and then from consciousness of guilt to the guilty deed." 1A J. Wigmore, *supra* § 173 at 1840.

The Supreme Court of Illinois, in *The People v. Gambony*, 402 Ill. 74, 80, 83 N.E.2d 321, 325 (1948), stated:

> Any attempt by a party to a suit, either civil or criminal, to conceal or, by threats or otherwise, to suppress evidence or obstruct an investigation of an issue, is relevant upon the trial of such issue. In a criminal prosecution any attempted intimidation of a witness is properly attributable to a consciousness of guilt, and testimony relating thereto is relevant and admissible in evidence.

A defendant's attempted intimidation or intimidation of a State's witness is evidence of the defendant's "conscious guilt" that a crime has been committed and serves as a basis for an inference that the defendant is guilty of the crime charged. See

*People v. Smith*, 3 Ill. App. 3d 958, 279 N.E.2d 512 (1972). See, also, *State v. Shaw*, 199 Mont. 248, 253, 648 P.2d 287, 290 (1982) (under Rule 404(b), Mont. R. Evid., the defendant's attempted intimidation of a witness was relevant to the crime charged, "indicating consciousness of guilt"). As further illustration that "there is no new thing under the sun," more than two millennia ago it was observed: "There is no witness so dreadful, no accuser so terrible as the conscience that dwells in the heart of every man." (Polybius.) Consequently, we now hold that, under Neb. Evid. R. 404(2), a defendant's attempted intimidation or intimidation of a State's informant or witness is relevant evidence concerning the defendant's conscious guilt that a crime has been committed, and is a circumstance from which an inference may be drawn that the defendant is guilty of the crime charged.

We conclude that Clancy's threatening telephone call to Jane DeVaney was important evidence to the State's case. The probative value of the telephone call, as proof of Clancy's conscious guilt for the crime charged, outweighed prejudice to Clancy and did not confuse the issues being tried or mislead the jury. See Neb. Evid. R. 403 (Neb. Rev. Stat. § 27-403 (Reissue 1985)) (exclusion of relevant evidence). Therefore, Jane DeVaney's testimony about the telephone call was admissible evidence.

Next, Clancy claims that a mistrial should have been granted in view of Jane DeVaney's testimony concerning the telephone call from Clancy.

> A mistrial results in nullification of a pending jury trial. In order to prevent defeat of justice or to further justice during a jury trial, a mistrial is generally granted at the occurrence of a fundamental failure preventing a fair trial in the adversarial process. Some examples are an egregiously prejudicial statement by counsel, the improper admission of prejudicial evidence, or the introduction of incompetent matters to the jury, to the extent that any damaging effect cannot be removed by proper admonition or instruction to the jury. [Citations omitted.]

> Courts have considerable discretion in passing on the

motions for mistrial, to the end that justice be more nearly effectuated.

*State v. Archbold*, 217 Neb. 345, 351, 350 N.W.2d 500, 504 (1984). Determination whether to grant a mistrial is a matter within the sound discretion of a trial court, whose ruling regarding a mistrial will be upheld unless such ruling constitutes an abuse of discretion. See *State v. Archbold, supra*. See, also, *State v. Borchardt, ante* p. 47, 395 N.W.2d 551 (1986). Because the evidence of the telephone call to DeVaney was admissible, as we have previously determined, there was no basis for the mistrial sought by Clancy, and the district court correctly denied Clancy's request for a mistrial.

Clancy's penultimate assignment of error is the denial of a directed verdict at the close of all the evidence. In a criminal case a court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged, or (2) evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. See, *State v. Smith*, 219 Neb. 176, 361 N.W.2d 532 (1985); *State v. Rubek*, 220 Neb. 537, 371 N.W.2d 115 (1985).

Clancy readily admitted that he brought the outboard motor to the DeVaney garage, where the motor remained in storage until removed by Deputy Larry Peterson. Thus, a critical point in this case is Clancy's explanation for his possession of the outboard motor. According to Clancy, after awaiting termination of a 2-hour conversation between Raymond Rothfuss and an unidentified "older fellow" at the Rothfuss residence in late November 1985, Clancy struck an agreement with Rothfuss for purchase of the outboard at a price of $500, with a deferred payment. Clancy never made a payment for the outboard. To counter Clancy's explanation that the motor had been purchased from Rothfuss, the State called Todd Burgess, who, after identifying the motor in question as the one severed with a hacksaw from his boat, established that his outboard motor was stolen. Melvin Schafer, a long-time fishing companion of Rothfuss, testified that he was acquainted with all Rothfuss' boating and fishing equipment; weekly checked everything at Rothfuss', including "coolers full of night

crawlers," during the last stages of Rothfuss' illness with cancer; and had seen Rothfuss' Ebko boat with two outboard motors, a 115-horsepower Evinrude and a 15-horsepower Scott motor, but no Mercury motor at the Rothfuss place. Carol Ann Spear, Rothfuss' daughter, testified that she frequently, at least weekly, visited her father, whose only occasion to be outside his home was when he went "to the hospital for cobalt treatments." Rothfuss died December 11, 1985. When Deputy Peterson began to question Clancy about the Mercury outboard motor, Clancy remarked: "Gee, I hope it isn't stolen." On cross-examination, in reference to his conversation with Deputy Peterson, Clancy was asked whether he was concerned that the motor was stolen, and Clancy answered: "Sure I was." Last, but not least, there was Clancy's threatening telephone call to Jane DeVaney, as previously mentioned.

"Circumstantial evidence is sufficient if the evidence and reasonable inferences that may be drawn from the evidence establish the defendant's guilt beyond a reasonable doubt." *State v. Ellis*, 223 Neb. 779, 782, 393 N.W.2d 719, 722 (1986). " 'One accused of a crime may be convicted on the basis of circumstantial evidence if, taken as a whole, the evidence establishes guilt beyond a reasonable doubt. The State is not required to disprove every hypothesis but that of guilt.' " *State v. Schott*, 222 Neb. 456, 462, 384 N.W.2d 620, 625 (1986). We conclude that, regarding every element of the offense charged, there was evidence with probative value to submit to the jury the question whether Clancy was guilty of the crime charged. The district court correctly denied Clancy's motion for a directed verdict.

Finally, Clancy claims the sentence imposed is excessive. Clancy is convicted of a Class IV felony, punishable by imprisonment for 5 years, a $10,000 fine, or both such imprisonment and fine, with no minimum penalty prescribed. See Neb. Rev. Stat. § 28-105 (Reissue 1985).

> We have regularly and repeatedly held that a sentence imposed within the statutory limits will not be modified on appeal, absent an abuse of discretion on the part of the trial court. [Citations omitted.] Furthermore, we have repeatedly held that the granting of probation as opposed

to imposing of a sentence is a matter which is left to the sound discretion of the trial court, and absent a showing of abuse, this court will not on appeal disturb the trial court's denial of probation.

*State v. Bovill*, 223 Neb. 764, 767, 393 N.W.2d 715, 717 (1986).

The presentence investigation and report discloses a long list of Clancy's prior criminal offenses, which includes the following convictions and sentences: 1979—three counts of misdemeanor theft (60 days in county jail) and a felony burglary (2 years' probation and 90 days in county jail); 1981—theft (90 days in county jail); 1984—assault (120 days in county jail), false reporting (60 days in county jail), and third degree assault (30 days in county jail); 1985—third degree assault (1 year in Nebraska Penal and Correctional Complex; released August 28, 1985). Based upon the nature of the charge in the present case and Clancy's history of criminal acts, including impermissible liberties with people and the property of others, we find that the district court did not abuse its discretion in the sentence imposed on Clancy.

AFFIRMED.