STATE OF NEBRASKA, APPELLEE, V. SAM JACOBS, APPELLANT.
STATE OF NEBRASKA, APPELLEE, V. RYAN JACOBS, APPELLANT.
410 N.W.2d 468

Filed August 7, 1987. Nos. 86-854, 86-855.

Stephen A. Scherr of Whelan, Foote & Scherr, P.C., for appellants.

Robert M. Spire, Attorney General, and James H. Spears, for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

A jury found defendant-appellant Sam Jacobs guilty of arson in the second degree in violation of Neb. Rev. Stat. § 28-503 (Reissue 1985), and of criminal mischief in violation of Neb. Rev. Stat. § 28-519 (Reissue 1985). The same jury found Sam Jacobs' son, defendant-appellant Ryan Jacobs, guilty of second degree arson. In accordance with the jury's verdicts, the district court adjudged each defendant guilty and sentenced Sam Jacobs to probation for a period of 3 years on the arson conviction and imposed a $250 fine on the criminal mischief conviction. Ryan Jacobs was sentenced to 3 years' probation. On appeal to this court each defendant assigns as errors the trial court's (1) failure to sustain the plea in abatement made by each defendant, (2) failure to grant a change of venue to each defendant, (3) admission of testimony concerning Sam Jacobs' prior conduct, (4) failure to grant a mistrial, and (5) failure to find the evidence insufficient to support the jury's findings of guilt. We affirm.

On Friday evening, August 2, 1985, Sam Jacobs got into a fight with Clinton Wreszinski and Kevin Lukasiewicz. Sam

Jacobs sustained some facial cuts, was treated at a hospital, and wanted charges brought against Wreszinski and Lukasiewicz. William Steele, a policeman for the city of St. Paul, located in Howard County, told Sam Jacobs that after the police finished gathering information on the fight, they would turn the matter over to the county attorney, who would decide if there was a basis upon which to press charges.

Lukasiewicz was a close friend of Scott and Ricky Klinginsmith and lived with their brother, Steve Klinginsmith. Ricky Klinginsmith owned a mobile home located in Howard County and lived there with Jeff Nowak. The mobile home was located 2.9 miles from Sam Jacobs' hog farm, a distance which could be traveled in 4 minutes and 15 seconds if the driver remained within the posted speed limits. Scott Klinginsmith lived with his parents, but Ricky Klinginsmith had given Scott permission to stay at the mobile home with Nowak while Ricky was in Minnesota.

On Saturday, August 3, 1985, Scott Klinginsmith and Nowak left the mobile home around 9 p.m. Because they did not have a key, they did not lock the front door. They drove Nowak's pickup truck and left Scott Klinginsmith's 1973 maroon Pontiac Grand Prix parked about 40 yards away.

Lukasiewicz owned a 1977 Pontiac Grand Prix which also was maroon and which Sam Jacobs knew Lukasiewicz had been driving on the night of the fight. The Lukasiewicz and Klinginsmith vehicles were of the same body style but perhaps differed in the configuration of the headlights, grill, and taillights. In addition, the Lukasiewicz automobile, unlike the Klinginsmith automobile, had a removable glass roof. The Lukasiewicz automobile displayed an "in transit" sticker.

According to his girlfriend, Ryan Jacobs left her house because of a telephone call he received around 9:15 p.m. that Saturday from his mother. Sam Jacobs wanted Ryan Jacobs home "because of the incidents that happened Friday night." When Ryan Jacobs arrived at home, Sam Jacobs asked him to change his clothes, purportedly to go burn musk thistles and shoot rats. Sam and Ryan Jacobs then left in the pickup truck with a rifle and a 4- to 5-gallon can filled with a mixture of diesel fuel and gasoline. A short while later, at 9:45 p.m., Ricky

Klinginsmith's mobile home was reported to be on fire. About 10 minutes after that, Ryan Jacobs was reported to be the victim of severe burns at the Jacobs' farm.

Additionally, Scott Klinginsmith's 1973 maroon Pontiac Grand Prix was found with a smashed windshield and driver's side window. Some blood was found on the driver's side rearview mirror.

Somewhere between 1:45 and 2 a.m., a few hours after the fire, Sheriff Bryer and others were at Sam Jacobs' farm, where Sam Jacobs took them out to a garbage or fire pit. This pit was an earthen hole about 4 feet by 10 feet and about 4 feet deep, which was used for burning garbage. Sam Jacobs told the sheriff that at about 9 p.m., Ryan Jacobs had dumped 4 or 5 gallons of gasoline-diesel fuel mixture into the pit, ignited it, and then fell into the pit at its east wall and came out on the same side. Sam Jacobs said he himself was burned while helping Ryan Jacobs out of the pit. According to Sam Jacobs, he rolled Ryan Jacobs in some grass or weeds near the pit in an effort to extinguish the flames, and he had ripped off Ryan Jacobs' clothes and then threw them into the pit.

Robert Burke, a deputy State Fire Marshal, was of the opinion that there had not been a recent fire in the pit because fresh paper, paper bags, Kleenex, and dried weeds were found on top of the ashes and debris left by a previous fire.

The St. Paul chief of police was also of the opinion that there had been no recent burning in the pit because of the dry grass, paper bags, and tissue paper found on top of old burnings.

The sheriff was also satisfied that there had not been any recent fire in the pit because he found no scuff marks on the wall where Ryan Jacobs was supposed to have come out from the pit, and found no smoke stains or anything that would indicate the intense heat that would radiate from 4 to 5 gallons of gasoline and diesel fuel.

An examination of the grass surrounding the pit showed it was still standing, and it appeared that no one had been rolled in it.

Sam Jacobs later changed his story about which side of the pit Ryan Jacobs was supposed to have fallen into. He also changed his story about the clothes Ryan Jacobs was wearing.

He had earlier said that he pulled off Ryan Jacobs' clothes and threw them into the pit, where they supposedly burned. However, after a search of the pit revealed no trace of any clothing, Sam Jacobs produced a cardboard box of laundered clothes which revealed no signs of having been burned.

The sheriff returned to the pit on August 5, where he took pictures and traced the path that Sam Jacobs said Ryan Jacobs had walked. It was a very difficult walk through the pit, and he left deep impressions, having sunk about halfway up to his knees. Although Sam Jacobs told the sheriff that the pit was in the same condition as the night of the fire, no similar impressions had been observed before.

Meanwhile, the deputy State Fire Marshal had concluded that the mobile home fire was set by a flammable liquid's having been poured onto the floor just inside the unlocked front door and then ignited.

The origin of the blood on the rearview mirror of the Klinginsmith automobile could not be precisely determined; however, laboratory tests did not rule out Sam Jacobs, who had a cut on an arm after the fire, as a possible source. He claimed both that he got the cut in the Friday night fight and that it had to come from something "like a hog panel wire" he brushed off of Ryan Jacobs' pants when rolling his son on the ground. However, a nurse who examined him at the hospital after the Friday night fight said the cut did not exist at that time.

Sam and Ryan Jacobs first assign as error the refusal of the district court to grant their respective pleas in abatement, in that there was no evidence at the preliminary hearing that a crime had in fact been committed, no competent testimony as to the cause of the fire, no evidence to place the defendants in the area of the fire, and no evidence of "any circumstantial nexus between the fire" and their conduct. The controlling principle is that any error in ruling on a plea in abatement is cured by a subsequent finding at trial of guilt beyond a reasonable doubt which is supported by sufficient evidence. *State v. Schreck, ante* p. 172, 409 N.W.2d 624 (1987); *State v. Baker,* 224 Neb. 130, 395 N.W.2d 766 (1986); *State v. West,* 223 Neb. 241, 388 N.W.2d 823 (1986). The issue is thus whether the evidence was sufficient to support the conviction. *State v. Baker, supra.*

Accordingly, resolution of this issue depends on the outcome of the fifth and last assignment of error, which challenges the sufficiency of the evidence. Thus, we need say nothing more about the matter at this point.

In connection with their second assignment of error, the defendants urge that the trial court erred in not granting their respective motions to change venue.

A motion to change venue under Neb. Rev. Stat. § 29-1301 (Reissue 1985), which permits such when it appears "that a fair and impartial trial cannot be had" in the county where the offense was committed, is addressed to the discretion of the trial judge, whose ruling will not be disturbed absent an abuse thereof. *State v. Bird Head,* 225 Neb. 822, 408 N.W.2d 309 (1987); *State v. Kern,* 224 Neb. 177, 397 N.W.2d 23 (1986). A trial court abuses its discretion in denying a motion to change venue where a defendant establishes that local conditions and pretrial publicity make it impossible to secure a fair trial. *State v. Kern, supra; State v. Irish,* 223 Neb. 578, 391 N.W.2d 137 (1986). To secure a change of venue on the basis of pretrial publicity, the defendant must show that publicity has made it impossible to secure a fair and impartial jury. *State v. Heathman,* 224 Neb. 19, 395 N.W.2d 538 (1986). The factors to be evaluated in determining whether a change of venue is required due to pretrial publicity include the nature of the publicity, the degree to which the publicity has circulated throughout the community, the degree to which the publicity circulated in areas to which venue could be changed, the length of time between the dissemination of the publicity complained of and the date of trial, the care exercised and ease encountered in the selection of the jury, the number of challenges exercised during the voir dire, the severity of the offenses charged, and the size of the area from which the venire is drawn. *State v. Bird Head, supra; State v. Kern, supra; State v. Heathman, supra; State v. Fallis,* 205 Neb. 465, 288 N.W.2d 281 (1980); *State v. Ell,* 196 Neb. 800, 246 N.W.2d 594 (1976). The law does not require that a juror be totally ignorant of the facts and issues involved; it is sufficient if the juror can lay aside his or her impressions or opinion and render a verdict based on the evidence presented in court. *Irvin v. Dowd,* 366 U.S. 717, 81 S.

Ct. 1639, 6 L. Ed. 2d 751 (1961); *State v. Bird Head, supra; State v. Kern, supra; State v. Heathman, supra; State v. Navarrete,* 221 Neb. 171, 376 N.W.2d 8 (1985); *State v. Torrence,* 192 Neb. 213, 219 N.W.2d 772 (1974), *cert. denied* 420 U.S. 928, 95 S. Ct. 1127, 43 L. Ed. 2d 399 (1975). Indeed, Neb. Rev. Stat. § 25-1636 (Reissue 1985) specifically provides that it shall not be a

> cause of challenge that a juror has read in the newspapers an account of the commission of a crime with which a prisoner is charged, if such juror shall state on oath that it is the belief of said person that he or she can render an impartial verdict according to the law and the evidence; and the court shall be satisfied as to the truth of such statement . . . .

In an effort to establish that a fair trial could not be had in Howard County, Sam Jacobs' wife, in a single day and within 4 working days of the scheduled trial, obtained the signature of 52 Howard County residents to affidavits containing the conclusion that Sam Jacobs could not obtain a fair and impartial trial because "many residents of Howard County have formed an opinion concerning the contents of the case which is prejudicial" to him. The affiants did not report their own state of mind but in some unexplained way purported to divine the state of mind of other Howard County residents.

Be that as it may, the record reflects that a local area newspaper initially reported on August 7, 1985, the fact that there had been two fires in Howard County which were suspected to have been deliberately set, one early Friday morning and another Saturday evening. A separate, unrelated article in the same paper reported that an ambulance call had been made for Ryan Jacobs at the Sam Jacobs home. Later news articles factually reported that Sam Jacobs and Ryan Jacobs had each been charged with criminal mischief and arson and that the Howard County commissioners had adopted a resolution appointing a special prosecutor to assist the county attorney in the cases.

Many of the 75 venirepersons, which total included three talespersons, had heard rumors about the cases. As a consequence, approximately 40 percent of 75 venirepersons

were excused by the court because they said they could not be fair and impartial. Nonetheless, in a little more than a day a jury was empaneled and an alternate selected with the exercise of but a single challenge for cause on the basis that one venirewoman could not be impartial. The court sustained the challenge because the woman had signed one of the affidavits mentioned earlier and after some vacillation reasserted she thought the trial should have been moved, although she had not made up her own mind "either way."

Under the circumstances, there was no abuse of discretion in refusing a change of venue, and there is therefore no merit to this assignment.

In their third assignment of error, the Jacobses urge the trial court erred by admitting evidence of the Friday night fight. Their claim is that such evidence was not relevant and was unduly prejudicial to them.

The language of Neb. Rev. Stat. § 27-404(2) (Reissue 1985) prohibits the introduction of evidence of other crimes, wrongs, or acts to prove one's character or to show that one acted in conformity therewith, but makes such evidence admissible for other purposes, including "proof of motive." *State v. Nesbitt, ante* p. 32, 409 N.W.2d 314 (1987); *State v. Clancy,* 224 Neb. 492, 398 N.W.2d 710 (1987). Nonetheless, Neb. Rev. Stat. § 27-403 (Reissue 1985) provides for the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of, among other things, unfair prejudice.

Balancing the need for evidence of other crimes, wrongs, or acts against the possible resulting prejudice is within the discretion of the trial court. *State v. Hunt,* 220 Neb. 707, 371 N.W.2d 708 (1985); *State v. Keithley,* 218 Neb. 707, 358 N.W.2d 761 (1984).

The attempt to explain how Ryan Jacobs came to be burned made relevant the question of whether the Jacobses had a motive to set fire to a mobile home near which there was parked an automobile which could have been mistaken for one seen in Lukasiewicz' possession and which had obviously been deliberately damaged. Under the circumstances, we cannot say the trial court abused its discretion in weighing the need for the questioned evidence as proof of motive against the danger of

prejudice to Sam and Ryan Jacobs and striking the balance in favor of admissibility. There is therefore no merit to this assignment.

The fourth assignment of error claims the trial court erred in not granting Sam and Ryan Jacobs' motions for mistrial "resulting from improper questioning by the prosecuting attorney and prejudicial and improper responses by a witness."

It is true that the sheriff demonstrated a remarkable inability, or unwillingness, to focus upon and limit his responses to the questions asked of him. However, the questions themselves were not improper, and there is no showing that the prosecutor was somehow responsible for the sheriff's wanderings. Moreover, upon the Jacobses' objection, the trial court instructed the jury to disregard the responses. Most importantly, the responses were cut off before any prejudicial statements were made.

The determination to declare a mistrial is a matter entrusted to the sound discretion of a trial court, whose ruling will be upheld absent an abuse of that discretion. *State v. Nesbitt, supra; State v. Clancy, supra.* A mistrial is properly declared when an event occurs during the course of a trial which is of such a nature that its damaging effects cannot be removed by proper admonition or instruction to the jury and would thus result in preventing a fair trial. *State v. Clancy, supra; State v. Borchardt*, 224 Neb. 47, 395 N.W.2d 551 (1986).

The record fails completely to establish such event. Consequently, the assignment is utterly without merit.

In their ultimate assignment, Sam and Ryan Jacobs argue that the evidence is insufficient to support their convictions and that the trial court thus erred in failing to sustain their respective motions for dismissal.

The thrust of this argument, and of the defense relied upon at trial, is that neither Sam nor Ryan Jacobs could be guilty as charged because each proved an alibi; that is, according to them, each proved he was at Sam Jacobs' fire pit at the relevant time and thus could not have been at the scene of the crimes.

To establish an alibi, a defendant must show that at the relevant time he or she was so far removed from the scene of the crime as to render it impossible for him or her to be the guilty

194

party. See, *State v. El-Tabech*, 225 Neb. 395, 405 N.W.2d 585 (1987); *Commonwealth v. Warrington*, 230 Pa. Super. 332, 326 A.2d 427 (1974).

The mobile home and damaged automobile were located but a brief span of time away from Sam Jacobs' home. Although the Jacobses claimed Ryan Jacobs was burned in the fire pit and rolled on the grass surrounding it to extinguish the flames, there were photographs of dry, unburned paper and other debris in the pit, and testimony from which the jury could reasonably conclude there in fact had been no recent fire in the pit and that no one had been rolled in the grass around it. Thus, the jury could reasonably conclude the Jacobses were not where they said they were at the time the crimes were committed. That, coupled with the evidence of the Jacobses' motive for revenge against Lukasiewicz, the presence at the scene of the fire of an automobile which could be mistaken for one seen in Lukasiewicz' possession, and the fact that the mobile home fire showed the presence of an accelerant, is adequate to support the jury's verdicts and the judgments entered pursuant thereto.

As we have so often said, in determining whether evidence is sufficient to sustain a conviction in a jury trial, this court does not resolve conflicts of evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh evidence presented to the jury. A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support the verdict. *State v. Nesbitt, ante* p. 32, 409 N.W.2d 314 (1987); *State v. Bird Head,* 225 Neb. 822, 408 N.W.2d 309 (1987); *State v. Walker,* 225 Neb. 794, 408 N.W.2d 294 (1987); *State v. El-Tabech, supra.* Moreover, one accused of a crime may be convicted on the basis of circumstantial evidence if, viewed as a whole, the evidence establishes guilt beyond a reasonable doubt. The State is not required to disprove every hypothesis but that of guilt. *State v. Nesbitt, supra; State v. Bird Head, supra; State v. El-Tabech, supra.* In a prosecution in which the State introduces competent evidence which, if believed by the jury, is sufficient to establish all elements of the crimes charged against the defendant, denial of the defendant's motion to dismiss is without error. *State v. West,* 223 Neb. 241, 388 N.W.2d 823 (1986).

The record failing to sustain the errors assigned, the judgments of the trial court are affirmed.

AFFIRMED.